J-A12023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL BATTAGLIA | : | |
| | : | |
| Appellant | : | No. 809 WDA 2021 |

Appeal from the Judgment of Sentence Entered March 23, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011924-2019

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: MAY 20, 2022**

Michael Battaglia (Appellant) appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas following his non-jury convictions of prohibited offensive weapon and restrictions on alcoholic beverages (possessing an open container in a vehicle).[1]  On appeal, he complains the verdict was against the weight of the evidence for his offensive weapon conviction and that his sentence is illegal for failing to comply with this Court's recent decision in **Commonwealth v. Koger**, 255 A.3d 1285 (Pa.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 908(a) and 75 Pa.C.S. 3809(a), respectively.

Super. 2021), *appeal granted*, 270 WAL 2021 (April 5, 2022).[2] For the following reasons, we affirm.

The underlying offenses stem from an August 21, 2019, incident in West Mifflin Borough, Allegheny County, Pennsylvania. On that date, Appellant went to the residence of Mary Jo Kelly and her son, Anthony Petosi, on Everlawn Drive. Kelly asked Appellant to leave twice and when he did not, she and her son contacted police. N.T. Habeas & Suppression Motion & Non-Jury Trial, 3/23/21, at 6, 8-9. After police arrived, they conducted a pat down search of Appellant's person and found brass knuckles in his pocket. *Id.* at 16. Appellant was subsequently charged with possession of a prohibited offensive weapon, possessing an open container in a vehicle, criminal trespass, resisting arrest, and disorderly conduct.[3]

Appellant filed an omnibus pretrial motion seeking *habeas corpus* relief, dismissal of his charge for resisting arrest, and suppression of the brass knuckles. Appellant's Omnibus Pretrial Motion, 3/6/20, at 4-6 (unpaginated). On March 23, 2021, the trial court held an omnibus pretrial and *habeas corpus* hearing where the Commonwealth presented the following evidence relevant to Appellant's claims that are before us.

_____

[2] We note the author of the **Koger** decision is the same as in this memorandum.

[3] 18 Pa.C.S. §§ 3503(b.11)(i), 5104, 5503(a)(1).

West Mifflin Borough Patrolman Ryan Sabol testified that on the day of the incident, he and Officer Hanes[4] responded to a call about an "unwanted male at the [Everlawn Drive] house refusing to leave the property." N.T., 3/23/21, at 13, 17. Patrolman Sabol approached Appellant and while they spoke, Appellant "kept reaching into his pockets and pulling" on his clothing. *Id.* at 14. Patrolman Sabol "asked him several times to stop . . . because [he] wasn't sure if [Appellant] had any weapons on him." *Id.* at 14-15. After asking him "two or three times" to stop placing his hands in and out of his pockets, the officer told Appellant he was going to "pat him down" and asked "if [Appellant] had anything on him that [the officers] needed to know about." *Id.* Appellant admitted he "had a set of brass knuckles in his back pocket." *Id.* at 15. He then told them he owned the weapon "because he live[d] in Wilkinsburg[, Pennsylvania] and needed them for his protection." *Id.* at 17. Patrolman Sabol conducted a pat down of Appellant, "immediately recognized the brass knuckles in his [right] back pocket[,]" and removed them. *Id.* at 16.

At the hearing, Appellant made an oral motion to withdraw his motion to suppress, which the trial court granted. N.T., 3/23/21, at 22, 26. The trial court denied Appellant's *habeas* petition. *Id.* at 26. Appellant then elected to move forward to a non-jury trial that same day. *Id.* Appellant agreed to incorporate the evidence presented at the omnibus pre-trial and *habeas*

---

[4] Officer Hanes's first name is not apparent from the record.

hearings for the purposes of the non-jury trial. *Id.* at 32. The Commonwealth recalled Patrolman Sabol to the stand, where he testified about the circumstances that led to Appellant's open container charge. N.T., 3/23/21, at 33.

Appellant took the stand and stated he "purchased [the brass knuckles] not as a weapon, but as" a belt buckle "at least six months" before the incident because he was "into weird things." N.T., 3/23/21, at 35. He testified that prior to the incident, the brass knuckles "had come off" the belt because "the screw came out." *Id.* at 36. He indicated he put them in the back pocket of his pants and "just forg[o]t" the weapon was still there when he put the pants on that day. *Id.*

Appellant testified that on the day in question, he drove to Kelly and Petosi's home with his friend, Brandon Garter, to use Petosi's computer after Garter informed him they had "permission" to be there. N.T., 3/23/21, at 41, 47. Appellant stated he willingly left Petosi's home after Kelly told him to leave. *Id.* at 43-44, 49-50. Appellant also testified that when Patrolman Sabol arrived, he was standing by his truck. *Id.* at 44. When the officer asked Appellant for his ID, he "started to check [his] pockets" and "felt the weight in [his] back pocket[.]" *Id.* at 43. Appellant testified he "sarcastically" told Patrolman Sabol he had "a paperweight" in his back pocket. *Id.* at 53. Contrary to Patrolman Sabol's testimony, Appellant stated the officer did not ask him to stop reaching in his pockets. *Id.* at 52. Appellant admitted two photos into evidence, one of him wearing the brass knuckles as a belt buckle

prior to the incident and another photo of the brass knuckles attached to the belt. *Id.* at 37-39.

At the conclusion of the non-jury trial, the trial court found Appellant guilty of possessing a prohibited offensive weapon and possessing an open container in a vehicle, and not guilty of the remaining charges. N.T., 3/23/21, at 70. The trial court proceeded immediately to sentencing where it imposed an aggregate term of four to eight months' incarceration, a consecutive term of 18 months' probation, and a fine of $25. *Id.* at 70, 77-78. The trial court identified the following conditions for Appellant's probation:

> Conditions of [Appellant's] probation are that [he] undergo a drug and alcohol assessment and comply with any recommended treatment that the probation office requires, and otherwise comply with all the conditions of probation.

*Id.* at 77.

Appellant filed a post-sentence motion challenging the weight of the evidence for his conviction of prohibited offensive weapon, which the trial court denied on June 10, 2021. Appellant then filed the present, timely appeal.[5]

Appellant raises the following claims for our review:

1. Where the evidence established that Mr. Battaglia possessed a belt buckle, an item with a common lawful purpose, did the trial court abuse its discretion in denying [Appellant's] post-

---

[5] Appellant also timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

sentence motion for a new trial because the verdict was against the weight of the evidence?

2. Where the trial court failed to specifically advise [Appellant] of the conditions of his probation at the time of his sentencing, did the trial court impose an illegal sentence by failing to articulate the conditions it deemed necessary to his probation?

Appellant's Brief at 6.

In his first claim, Appellant argues his conviction for prohibited offensive weapon was against the weight of the evidence.[6] Appellant's Brief at 17.

This Court's standard of review of a weight of the evidence claim is well-settled:

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted). Further, the fact finder is free to believe all, some, or none or the evidence presented. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation omitted).

This Court will not find an abuse of discretion

---

[6] Appellant properly preserved his weight of the evidence claim in his post-sentence motion pursuant to Pa.R.Crim. 607. Appellant's Post-Sentence Motion, 3/29/21, at 2 (unpaginated).

based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Importantly, [this C]ourt should not find that a trial court abused its discretion merely because [we] disagree[ ] with the trial court's conclusion. Indeed, "when reviewing the trial court's exercise of discretion, it is improper for [this C]ourt to 'step[ ] into the shoes' of the trial judge and review the evidence *de novo*." In other words, [this C]ourt "may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court."

**Commonwealth v. Gill**, 206 A.3d 459, 467 (Pa. 2019) (citations and some quotation marks omitted).

Preliminarily, we note it is necessary to set forth the elements of the crime of prohibited offensive weapon and the "curio" defense as defined in 18 Pa.C.S. § 908(b)(1) to understand Appellant's argument. The statute states an individual commits the crime at issue when they, *inter alia*, "use" or "possess" "any offensive weapon[,]" and explicitly lists "metal knuckles" in its definition of "offensive weapons." 18 Pa.C.S. § 908(a), (c). An individual may assert, and prove by a preponderance of the evidence, the defense that they owned the offensive weapon "solely as a curio . . . or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully." 18 Pa.C.S. § 908(b)(1). Neither the statute for prohibited offensive weapon nor Black's Law Dictionary defines "curio," so we turn to the Merriam-Webster Dictionary, which defines "curio" as "something (such as a decorative object) considered novel, rare, or bizarre." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/curio (last visited May 5, 2021).

Here, Appellant contends "the evidence established that [he] possessed the belt buckle under circumstances which showed he did not intend to use [it] in an unlawful manner." *Id.* at 15. He asserts that he "testified credibly that he bought the belt buckle six months prior in the South Side neighborhood of Pittsburgh, and possessed the item not as a weapon, but as a weird item. [Appellant states his] possession meets the definition of a curio, as it is commonly defined." *Id.* at 22-23. Furthermore, he alleges "the circumstances of this case demonstrate that there was no intent or likelihood that the weapon would be used unlawfully[ because he] never threatened anyone and, indeed, did not even remember that he had the belt buckle on his person until [Patrolman] Sabol indicated he would search [him]." *Id.* at 23. Appellant insists that "[w]hen properly weighed," the evidence, his testimony, and the photos of the brass knuckles as a belt buckle, supported his affirmative defense that he owned the item "as a curio" and "would not be used unlawfully." *Id.* at 21, 25-26 (footnote omitted).

In denying Appellant's weight claim, the trial court pointed out that Appellant's argument "can be reduced to a single proposition, that [it] should have given Appellant's testimony more weight than" Patrolman Sabol's. Trial Ct. Op. 9/10/21, at 6. The court "reject[ed]" Appellant's testimony regarding the defense that he owned the brass knuckles as a curio, stating it "did not find Appellant's testimony credible." Trial Ct. Op. at 8. It detailed the following reasons in support of its conclusion:

It defies common experience to believe that a person can walk around with the weight of brass knuckles in one's back pocket, much less sit on them, as Appellant would have done during the drive to . . . Everlawn Drive and be unaware of their existence. [Appellant's photos] appear[ ] to demonstrate that [he] has used brass knuckles as a belt buckle in the past, the question at trial was how Appellant possessed them on August 21, 2019. Appellant's characterization of the brass knuckles was inconsistent at best. He offered they are a "weird" item as to qualify as a curio but admitted on cross that he described them as a "paper weight" to [Patrolman] Sabol. Moreover, Appellant's testimony that he went to [Kelly and Petosi's home with] permission was contradicted by the fact that [they] did not allow him in and called the police to have him removed from the property. There was no corroboration regarding the presence of a third-party, Brandon [Garter]. Of equal importance, it is inconceivable to this [c]ourt that a police officer would permit a person who is currently subject to questioning to repeatedly put his hands in and out of his [ ] pockets.

*Id.* at 8.

We agree with the trial court's conclusion that Appellant's argument amounts to a request to reweigh the evidence in his favor – a request that is beyond our scope of review. We point out that the trial court, sitting as the finder of fact, was entitled to believe all part or some of the evidence presented at trial. **See Champney**, 832 A.2d at 408. The court specifically found that Appellant was not credible. **See** Trial Ct. Op. at 8. The court heard from the witnesses, viewed the exhibits, and listened to the parties' arguments. As we cannot substitute the trial court's credibility determinations for our own and we detect no abuse of discretion, we conclude no relief is due. **See Champney**, 832 A.2d at 408; **Lyons**, 79 A.3d at 1067. Accordingly, Appellant's first claim fails.

Next, we address Appellant's legality of sentencing claim, which we review by the following standard:

[A] claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. Issues relating to the legality of sentence are questions of law, and thus, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Clarke**, 70 A.3d 1281, 1284 (Pa. Super. 2013) (quotation marks and citations omitted). Further, a claim pertaining to the legality of sentence may be raised for the first time on appeal and is not subject to waiver. **Commonwealth v. Foster**, 960 A.2d 160, 163 (Pa. Super. 2008).

In Appellant's second claim, he argues the trial court imposed an illegal sentence when it told him to "comply with all the conditions of probation." Appellant's Brief at 28. Appellant maintains that the court "did not explain" the conditions of his probation, "did not ask [him if he] had any questions about these conditions," and did not "specifically advise[ him] of his conditions of probation and parole at sentencing[,]" thus violating **Commonwealth v. MacGregor**, 912 A.2d 315, 317 (Pa. Super. 2006) (stating "the legislature [in the Sentencing Code] has specifically empowered the court, not the probation offices and not any individual probation officers, to impose the terms of probation.") (citation and emphasis omitted), and **Koger**, 255 A.3d at 1291 (holding the sentencing court must advise a defendant of the terms of their probation before finding a violation of any such condition). **Id.** at 28-30. Appellant insists the trial court "defer[ed] authority to impose the specific

terms of probation to the probation officer." *Id.* at 29. Appellant also rejects the trial court's reasoning that *Koger* is inapplicable to the present facts because his claim is not ripe for review since Appellant is appealing his initial conviction and not a violation of probation. *Id.* at 30. He concludes that "only the court has the authority to impose the terms of probation and . . . must advise the defendant of those conditions at sentencing." *Id.* (emphasis omitted).

Preliminarily, we distinguish the present matter from *Koger* based on the procedural posture of the two cases. In *Koger*, the appellant pled guilty to possession of child pornography and criminal use of a communication facility. *Koger*, 255 A.3d at 1287. After sentencing, the appellant was immediately paroled and sentenced to a consecutive term of three years' probation. *Id.* The trial court imposed the following terms on the appellant's sentence:

> As special conditions of this sentence, [the appellant] shall have no contact with any victims or persons displayed in the images. [the appellant] shall submit to a drug and alcohol evaluation and complete any recommended treatment; perform 100 hours of [c]ommunity [s]ervice and complete sexual offender counseling.

*Id.* Subsequently, the trial court revoked the appellant's probation and parole after he stipulated to the following violations:

> Condition 7, [relating to refraining] from any assaultive, threatening, or harassing behavior[,] Condition 1, [failing] to permit a [probation officer] to visit [him at his] residence [ ] and submit to warrantless searches of [his] residence, vehicle, property, and/or [his] person[,] and Condition 2, [relating to violations of] criminal laws or ordinances.

*Id.* (quotation marks omitted).  The trial court then resentenced him to serve the balance of his maximum sentence.  ***Koger***, 255 A.3d at 1288.

Appellant challenged, *inter alia*, the legality of his sentence stating the Commonwealth failed to prove he violated any actual terms of his probation or parole.  ***Id.*** at 1288-89.  A panel of this Court determined the trial court "did not advise [the appellant] of the general conditions of his probation or parole at the time of sentencing" but instead "the probation and parole conditions were explained to [the appellant] **after** sentencing, by an adult probation officer."  ***Koger***, 255 A.3d at 1288 (emphasis in original).  Because the trial court did not impose the conditions the appellant was alleged to have violated, it could not then find the appellant had violated any such terms.  ***See id.*** at 1291.  ***see also Commonwealth v. Elliott***, 50 A.3d 1284, 1292 (Pa. 2012) (stating:  (1) probation offices may "impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court[;]" and (2)"a trial court may impose conditions of probation in a generalized manner, and the [office of probation] may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation.").  The panel concluded "the trial court erred in failing to specifically advise [the a]ppellant of the conditions of his probation and parole at the time of his initial sentencing" and that because the trial court did not impose the alleged violated conditions at the time of sentencing, "the court could not have found he 'violated one of the 'specific

- 12 -

conditions' of probation [or parole] included in the probation order[.]" ***Koger***, 255 A.3d at 1290-91. The panel further opined that, "a sentencing court may not delegate its statutorily proscribed duties to probation and parole offices and is required to communicate any conditions of probation or parole as a prerequisite to violating any such condition." ***Id.*** at 1291.

Turning to the present matter, the trial court stated:

> ***Koger*** is inapplicable to Appellant's claim. First, the holding in ***Koger*** did not deem the initial sentence by the trial court illegal based on the conclusion that the probation department, not the sentencing court, informed the defendant of his conditions. Second, the issue in ***Koger***, the ability of the trial court to determine a violation of probation, is not ripe inasmuch as Appellant is appealing his initial conviction. Third, [the trial court] properly advised [Appellant] of his probation conditions[.]

Trial Ct. Op. at 10.

We agree with the trial court that ***Koger*** is not applicable to the present facts for several reasons. First, in ***Koger***, the panel never held that the underlying sentence was illegal. Rather, the case concerned the inability of the Commonwealth to prove that the appellant violated a condition of the probation when those conditions were not imposed by the trial court. Second, because Appellant has not committed any alleged probation violation, the issue as to whether the court has the ability to determine a violation occurred is not ripe for review. ***See*** Trial Ct. Op. at 10. To grant Appellant relief under the current circumstances would have this Court engage in speculation that at an unspecified time in the future, Appellant will commit some act that both the office of probation and the trial court agree is a violation of his probation,

- 13 -

without the trial court having imposed the condition on him at sentencing. While we understand Appellant's concerns about committing a violation of the terms of his probation, we cannot just presume that he will do so.

The trial court imposed the following conditions on Appellant regarding his probation:

> Conditions of [Appellant's] probation are that [he] undergo a drug and alcohol assessment and comply with any recommended treatment that the probation office requires, and otherwise comply with all the conditions of probation.

N.T., 3/23/21, at 77. Appellant acknowledged these terms when he replied in the affirmative after the trial court asked him, "Do you understand your sentence, sir?" *Id.*

We note the phrase "otherwise comply with all the conditions of probation[,]" does not, under the present facts, render Appellant's sentence illegal. While only a court may impose the terms of probation, the office of probation "may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." ***Elliott***, 50 A.3d at 1292 (Pa. 2012). "[A] trial court may impose conditions of probation in a generalized manner, and the [office of probation] may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation." ***Id.***

In the present case, the trial court ordered Appellant to undergo a drug and alcohol assessment "and comply with any recommended treatment that

the probation office requires, and otherwise comply with all the conditions of probation." N.T., 3/23/21, at 77. Unlike **Koger**, the office of probation did not impose unrelated terms of probation on Appellant nor did the trial court attempt to delegate its sentencing duties. Under **Elliott**, the office of probation would be well within the confines of the law to dictate more specific conditions that "are in furtherance of the trial court's" already imposed conditions. **See Elliott**, 50 A.3d at 1292. No relief is due and Appellant's second claim is unavailing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/20/2022