**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 15 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered June 4, |
| | : | 2021 at No. 251 WDA 2020, |
| v. | : | reversing the revocation of |
| | : | probation and parole and vacating |
| | : | the Judgment of Sentence of the |
| CHRISTOPHER ALBERT KOGER, | : | Court of Common Pleas of |
| | : | Washington County entered |
| Appellee | : | January 22, 2020 at No. CP-63-CR- |
| | : | 0000233-2018. |
| | : | |
| | | ARGUED:  October 25, 2022 |

**OPINION**

**JUSTICE DOUGHERTY**                                                   **DECIDED: MAY 16, 2023**

In *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019), this Court examined the statutory framework governing probation revocations and concluded that, under the "clear and unambiguous" language of 42 Pa.C.S. §9771(b) (Modification or revocation of order of probation) and 42 Pa.C.S. §9754(b) (Order of probation), "a court may find a defendant in violation of probation only if the defendant has violated one of the 'specific conditions' of probation included in the probation order or has committed a new crime."  *Foster,* 214 A.3d at 1250.  The present case is not about probation; it is about parole.  Purporting to rely on certain passages from *Foster* and the statutes we examined in that decision, the Superior Court below held "a sentencing court may not delegate its statutorily pr[e]scribed duties" but must instead personally "communicate any conditions of probation **or parole**

as a prerequisite to violating any such condition." *Commonwealth v. Koger*, 255 A.3d 1285, 1291 (Pa. Super. 2021) (emphasis added). We granted the Commonwealth's petition for allowance of appeal to consider whether the Superior Court improperly expanded *Foster* in this regard. As we conclude it did, we reverse in part.

Appellee Christopher Albert Koger pleaded guilty on August 21, 2018, to one count each of possession of child pornography and criminal use of a communication facility.[1] The charges stemmed from "child pornography [that] had been found on [his] cellular telephone" by his daughter, who alerted law enforcement. N.T. Guilty Plea Hearing, 8/21/18 at 7. The trial court accepted appellee's guilty plea and imposed eight to twenty-three months' incarceration for possession of child pornography and a consecutive term of three years' probation for criminal use of a communication facility. Additionally, "[a]s special conditions of this sentence," the court ordered appellee to "have no contact with any victims or persons displayed in the images. [He] shall submit to a drug and alcohol evaluation and complete any recommended treatment; perform 100 hours of [c]ommunity [s]ervice[;] and complete sexual offender counseling." *Id.* at 17.

After being awarded credit for time served, appellee was immediately paroled to the supervision of the Washington County Adult Probation Office.[2] Relevant here, "[i]n accordance with long standing procedures in Washington County, the trial court . . . did not advise [appellee] of the general conditions of his probation or parole at the time of sentencing. Rather, the general rules, regulations, and conditions governing probation

---

[1] *See* 18 Pa.C.S. §6312(d) and §7512(a).

[2] Where, as here, the total sentence imposed is less than two years, the Sentencing Code gives parole authority to the sentencing judge. *See* 42 Pa.C.S. §9776(a) ("Except as otherwise provided under this chapter or if the Pennsylvania Parole Board has exclusive parole jurisdiction, a court of this Commonwealth . . . may, after due hearing, release on parole an inmate in the county correctional institution of that judicial district."). If a sentencing court "paroles [an] inmate, it shall place the inmate in the charge of and under the supervision of a designated probation officer." *Id.* §9776(d).

and parole in Washington County **were explained to [appellee] by an adult probation officer immediately following the sentencing proceeding**.”  Trial Court Letter, 5/6/21 at 1 (emphasis added).  Appellee signed and was “provided [with] a copy of the rules[.]”  N.T. Revocation Hearing, 11/4/19 at 9.

Only weeks later, appellee violated the terms of his release.  A revocation petition alleged that, “[o]n September 14, 2018, [he] was in possession of pornographic [ ] and sexually perverse material in violation of [his] sex offenders[’] program.”  First Petition for Revocation of Probation or Parole, 10/4/18 at 2.[3]  At a subsequent revocation hearing, appellee acknowledged he “committed a violation of [his] parole and probation.”  N.T. Revocation Hearing, 12/21/18 at 8.  “Based upon the stipulation[,]” the trial court revoked appellee’s parole and probation and remanded him to serve the balance of his maximum sentence on count one, with the privilege of work release, and on the condition he was to be re-paroled on June 21, 2019.  *Id.* at 8-9.  As for count two, “[e]ven after [appellee] stipulated to being in technical violation of his probation, the [c]ourt, nevertheless, gave [him] a second chance to make meaningful progress towards his rehabilitation without having to resort to state incarceration, and merely reinstated his probation for a period of three years.”  Trial Court Opinion, 5/26/20 at 22.

“However,” appellee “continued to violate [the] terms” of his supervision within weeks of being re-released.  *Id.*  According to a second parole and probation revocation petition filed on September 16, 2019, appellee violated the following conditions of his supervision shortly after being re-paroled on June 21, 2019:

> Condition #1: Report to your [probation officer (“PO”)] as directed and permit a PO to visit you at your residence or place of employment and submit to warrantless searches of your residence, vehicle, property, and/or your

---

[3] Providing just one example, the revocation petition described a “chat dialog” in which appellee stated to another, “I’ve done 8 but they aren’t developed enough to cum.”  First Petition for Revocation of Probation or Parole, 10/4/18 at 2.

person and the seizure and appropriate disposal of any contraband found.
. . .

Condition #2: Do not violate any criminal laws or ordinances. . . .

Condition #7: Refrain from any assaultive, threatening or harassing behavior. . . .

Condition #10: Avoid unlawful and disreputable places and people. Avoid any specific persons, places, groups, or locations if so instructed by your PO. . . .

Second Petition for Revocation of Probation or Parole, 9/16/19 at 2.[4]

In addition to providing a brief factual summary in support of each alleged violation within the petition itself, *see id.*, Probation Officer Jeremy Bardo ("PO Bardo") also testified to appellee's infractions at a hearing. PO Bardo explained how, on July 16, 2019, he and another probation officer visited appellee's residence and performed a search of appellee's bedroom. Although appellee "was calm initially," once the officers asked to see his cell phone he "cl[e]nched, tightened up, held the phone, [and] turned away." N.T. Revocation Hearing, 11/4/19 at 9-10. Appellee "was trembling, shaking, real nervous, [and] real defensive[,]" and he told the officers they "weren't allowed to look through the phone." *Id.* at 9. The situation escalated and the officers had to use force to detain him. Ultimately, the officers determined they "should put him in custody due to [their] safety, and his safety." *Id.* at 10.

During transport to the Washington County Correctional Facility, PO Bardo asked appellee for the passcode to unlock his cell phone, which appellee eventually provided. Appellee then confirmed there "might be" pornographic material on his phone. *Id.* at 7.

---

[4] The Commonwealth never produced or admitted into evidence the rules provided to and signed by appellee following sentencing, so they are not in the certified record. It is thus unclear whether the "conditions" discussed above are verbatim reproductions of the rules or summaries thereof.

Upon examining the phone, PO Bardo found messages between appellee and "a female who identified herself as Jessica, 15 years old." *Id.* at 14. PO Bardo elaborated he saw

> [t]ext[s], pictures. . . . I saw enough in the texts. [Appellee] also sent a picture of himself and identified himself, his age. Presently he is 46 years old, and also there was a picture of [the fifteen-year-old female] without any clothes on pleasuring herself.

*Id.* at 15. In PO Bardo's view, "[i]t appeared in the messages [appellee] was grooming [the minor] with conversation, her past life, relationships with family, his personality, [and] romance." *Id.*

PO Bardo also testified about what occurred once they arrived at the jail. He explained he overheard appellee say, "You're fucking with the wrong German." *Id.* at 9. PO Bardo asked appellee to whom he was speaking and whether he was threatening to fight the officers. Appellee responded, "not you, but him," referring to another officer. *Id.*[5]

Finally, PO Bardo detailed a prior incident during which appellee was removed from a community service office for "using vulgar language and being disrespectful with staff[.]" *Id.* at 8. On that occasion, appellee became agitated after he was confronted for having a prohibited "cell phone while working at the [Furlough Into Service ("FITS")] program." *Id.* at 7-8.[6]

At the conclusion of the revocation hearing, the trial court determined appellee had "violated his parole and probation by committing technical violations thereof, and his

---

[5] The court did not credit appellee's explanation at the revocation hearing that his threat to "fight" the other officer was actually "about fighting him [on] the law." N.T. Revocation Hearing, 11/4/19 at 23. We also observe appellee's counsel acknowledged, "If the [c]ourt finds that that is threatening bodily harm, then I could see a revocation[.]" *Id.* at 32.

[6] The FITS program "allows [p]articipants incarcerated at W.C.C.F. the opportunity to reduce" their court-related financial obligations by permitting them "to perform large-scale projects on weekends and smaller projects on weekdays." *Community Services,* WASHINGTON CTY. COURTS, https://www.washingtoncourts.us/170/Community-Services (last visited May 1, 2023).

parole and probation [were t]hereby revoked." *Id.* at 34. In its Pa.R.A.P. 1925(a) opinion, the court explained that, based on PO Bardo's testimony — which the court found "to be unbiased and extremely credible" — "the Commonwealth provided sufficient evidence to sustain [appellee]'s parole and probation revocation and established **each specific violation thereof** by a preponderance of the evidence." Trial Court Opinion, 5/26/20 at 14, 18 (emphasis added).[7]

Having revoked appellee's parole and probation for the second time, the trial court proceeded to resentence him on January 22, 2020. With respect to count one, the court ordered appellee "remanded to [a] state correctional institution to serve the balance of his maximum sentence." N.T. Resentencing Hearing, 1/22/20 at 24. Regarding count two, the court expressed its view that, "[c]learly, [appellee]'s probation was no longer achieving its desired aims of rehabilitation and deterring criminal activity." Trial Court Opinion, 5/26/20 at 22. "Therefore, instead of reinstating a probation sentence for a third time," the court "determined that a sentence of incarceration was necessary in order to vindicate [its] authority." *Id.* at 22-23. Accordingly, the court imposed a consecutive sentence of one to three years' state imprisonment.

---

[7] Notwithstanding the trial court's statement in its opinion that it determined each specific violation had been proven, it made no mention of Condition #10, in which PO Bardo alleged appellee failed to "[a]void unlawful and disreputable places and people" by being "in possession of sexually perverse material and dialogue with a fifteen year old female on his cellular phone." Second Petition for Revocation of Probation or Parole, 9/16/19 at 2. In any event, the court clearly found appellee had violated the other conditions alleged, including two violations of Condition #7 regarding threatening or assaultive behavior. *See, e.g.*, Trial Court Opinion, 5/26/20 at 15 (appellee's "statement at the sally port, alone, provided . . . sufficient evidence to revoke"); *id.* (crediting Officer Bardo's description of the incident at the community service office); *id.* at 17 (concluding appellee violated Condition #1 because he "refused to submit to a warrantless search and seizure of his cell phone"); *id.* at 18 (finding appellee "in direct violation of Condition [#]2" based on "the messages and photographs [PO Bardo] personally observed between [appellee] and a fifteen-year-old child" on appellee's cell phone).

Appellee filed a timely appeal. He challenged the sufficiency of the evidence supporting the revocation of both his parole and probation, as well as the legality of his newly imposed sentence. As appellee saw it, the evidence was insufficient to support either revocation because the Commonwealth failed to present any "evidence of what the actual terms and conditions" of his supervision were. Appellee's Superior Court Brief at 17. Put differently, appellee believed the Commonwealth needed to introduce a copy of the rules he signed immediately after sentencing, and he argued the revocation petition's ostensible recitation of those conditions — even when considered alongside PO Bardo's credited testimony that appellee personally signed and was given a copy of the conditions of his parole — was not enough to prove appellee was subject to them by a preponderance of the evidence. *See id.* (positing without such evidence, "the Commonwealth could not, by necessity, prove [he] had violated" any terms or conditions of his supervision). The Commonwealth, in contrast, argued appellee's sufficiency-related claims were waived because they are really due process challenges, and at no time during the revocation hearing did appellee ever "object[ ] to any failure to establish the conditions of supervision." Commonwealth's Superior Court Brief at 8. In any event, the Commonwealth contended it produced sufficient evidence because the revocation petition "clearly indicates the conditions and alleged violations" and, regardless, it was "unable to locate any case law" requiring it to produce the actual signed conditions. *Id.*; *see also* Trial Court Opinion, 5/26/20 at 26 (rejecting argument appellee was unaware of his alleged violations because "[n]ot only did Officer Bardo include [in the revocation petition] the particular numeric conditions [appellee] allegedly violated, but he also provided specific examples and dated events" relevant to each violation).

A three-judge panel of the Superior Court remanded with instructions. The panel explained it was "unable to determine whether the sentencing court, on August 21, 2018,

imposed the conditions [appellee] has now been found to have violated." *Commonwealth v. Koger*, 2021 WL 1233387, at *3 (Pa. Super. 2021) (unpublished memorandum). So, it remanded "for the trial court to prepare a supplemental opinion addressing whether it imposed, or advised [appellee] of, the terms of his probation and parole at the time of the initial sentencing." *Id.* at *1. The trial court responded with the letter cited earlier, in which it candidly acknowledged the parole and probation requirements "were explained to [appellee] by an adult probation officer immediately following the sentencing proceeding." Trial Court Letter, 5/6/21 at 1.

When the case returned to the Superior Court, it reversed appellee's parole and probation revocations and vacated his new judgment of sentence. In a published opinion authored by Judge McCaffery and joined by President Judge Emeritus Bender and Judge Lazarus, the court held that, "because the [trial] court did not advise [appellee] of the conditions of his probation and parole at the time of the initial sentencing, the court could not have found he violated these conditions." *Koger*, 255 A.3d at 1287. As *Foster* was central to the Superior Court's holding, we pause briefly here to examine our decision there.

We granted discretionary review in *Foster* to consider whether the Superior Court erred by "ignoring the governing statute and due process protections" when it sanctioned the revocation of Foster's probation based solely on his offensive social media posts, even though the terms of his probation made no such proscription. *Foster*, 214 A.3d at 1245-46. In concluding it did so err, we "resolved [the case] through our rules of statutory construction," rendering it unnecessary to "address Foster's due process claim." *Id.* at 1247 n.8. We explained:

> We find the language of the pertinent statutory provisions to be clear and unambiguous. The law provides a general condition of probation — that the defendant lead "a law-abiding life," *i.e.*, that the defendant refrain from committing another crime. [42 Pa.C.S ]§9754(b). To insure that general

condition is met, or to assist the defendant in meeting that general condition, the order must also include certain "specific conditions" from the list enumerated in section 9754(c). Only upon the violation of any of the "specified conditions" in the probation order (general or specific) may a court revoke the defendant's probation. *Id.* §9771(b). In other words, a court may find a defendant in violation of probation only if the defendant has violated one of the "specific conditions" of probation included in the probation order or has committed a new crime. The plain language of the statute does not allow for any other result.

*Id.* at 1250. *Foster* thus settled "what constitutes a permissible basis for a court to find an individual in violation of probation": a court "must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime to be found in violation." *Id.* at 1243.

Returning to this case, the Superior Court in a footnote acknowledged *Foster* dealt exclusively with "probation revocations and not parole[.]" *Koger*, 255 A.3d at 1291 n.6. However, it reasoned that since *Foster* cited "language in *Morrissey v. Brewer*, 408 U.S. 471 (1972)" — wherein the High Court held due process requires states to afford some opportunity to be heard prior to revoking an individual's parole — it was appropriate to "review violations of probation and parole under the same standard." *Id.* Based on that understanding, the court made the following two attempts to bring the processes for parole and probation revocations into parity.

First, the Superior Court bracketed the phrase "or parole" directly into *Foster*'s language. It stated: "Because the trial court did not impose, at the time of the August 21, 2018, sentencing any specific probation or parole conditions, the court could not have found he 'violated one of the specific conditions of probation **[or parole]** included in the probation order[.]'" *Id.* at 1291 (bracketed material in original; emphasis added), *quoting Foster*, 214 A.3d at 1250; *see also id.* at 1289-90 (making same bracketed insertion two additional times). Second, while citing 42 Pa.C.S. §9754(b), the court used an ellipsis in a manner that removed any reference to the "conditions of probation" to which the statute

refers. *Compare Koger*, 255 A.3d at 1291 ("The court shall attach such of the reasonable conditions . . . as it deems necessary to insure or assist the defendant in leading a law-abiding life.") (internal quotations, citation, and emphasis omitted; ellipsis in original) *with* 42 Pa.C.S. §9754(b) ("The court shall attach reasonable conditions authorized by section 9763 (relating to conditions of probation) as it deems necessary to ensure or assist the defendant in leading a law-abiding life.").[8] It then relied on that abridged version of the statute to hold "a sentencing court may not delegate its statutorily pr[e]scribed duties to probation and parole offices and is required to communicate any conditions of probation **or parole** as a prerequisite[.]" *Koger*, 255 A.3d at 1291 (emphasis added).

At the Commonwealth's request, we granted allowance of appeal to determine whether the Superior Court "err[ed] in expanding this Court's holding in [*Foster*], and the statutory requirements related to probation conditions under 42 Pa.C.S. §9754[,] to not only probation but also parole cases[.]" *Commonwealth v. Koger*, 276 A.3d 202 (Pa. 2022) (*per curiam*).[9] This presents a question of law involving statutory interpretation, "for which our scope of review is plenary and our standard of review is de novo." *Foster*, 214 A.3d at 1247.

Upon our review, we conclude the Superior Court erred. We begin by emphasizing *Foster* "present[ed] a question of statutory interpretation[.]" *Id.* More precisely, it required

---

[8] Section 9754 was amended effective December 18, 2019, shortly after appellee's parole and probation were revoked the second time. *See* Pub. L. 776, No. 115, §4. The version in effect when his supervision was initially imposed read: "The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. §9754(b) (former). Thus, the amendment simply removed the applicable "conditions of probation" from subsection (c) of Section 9754, and all conditions are now found within 42 Pa.C.S. §9763(b).

[9] The Commonwealth now agrees the Superior Court's reversal of appellee's probation revocation was "in line with this Court's holding in *Foster*." Commonwealth's Brief at 18. Consequently, we are only concerned here with the propriety of his parole revocation.

us to examine several statutes — notably, 42 Pa.C.S. §9771 and §9754 — which relate exclusively to probation, not parole. In conducting our analysis, we explained the plain terms of Section 9771, titled "Modification or revocation of order of probation," clearly provide that "[r]evocation of probation . . . is sanctioned only 'upon proof of the violation of specified conditions of the probation.'" *Id.* at 1250 (emphasis omitted), *citing* 42 Pa.C.S. §9771(b). In turn, "[u]nder the heading '[c]onditions generally,' [S]ection 9754 requires the sentencing court to attach any 'reasonable conditions . . . as it deems necessary to insure or assist the defendant in leading a law-abiding life.'" *Id.* at 1249, *citing* 42 Pa.C.S. §9754(b) (former). As we expounded in *Foster*, although this latter statute generally requires **the court** to attach the conditions of probation, this Court has also "recognized that probation officers may, consistent with their [own] statutory authority, impose specific conditions of supervision pertaining to [a] defendant's probation . . . 'in furtherance of the trial court's conditions of probation.'" *Id.* at 1244 n.5, *quoting Commonwealth v. Elliott*, 50 A.3d 1284, 1292 (Pa. 2012).

Here, the Superior Court did not engage in a statutory analysis. Instead, its only justification for expanding *Foster* to cover parole cases was its explanation that, "as the trial court state[d]," the *Foster* Court "relied on language in *Morrissey*" and, thus, "the same standard" applies to violations of probation and parole. *Koger*, 255 A.3d at 1291 n.6. And, the trial court itself explained:

> Although *Foster* specifically addresse[d] the requirements for a probation revocation, not a parole revocation, the Pennsylvania Supreme Court reached its decision, in part, based on the language in the seminal decision, *Morrissey v. Brewer*, 408 U.S. 471, 92 [*sic*] (1971). *Foster*, 214 A.3d at 1248. In *Morrissey*, the United States Supreme Court addressed the requisites needed to find a defendant in violation of his parole, stating that "the first step in a revocation decision . . . involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole." *Id.* at 479-80. Therefore, it is this [c]ourt's interpretation that a court may only find a defendant to be in violation of either parole or probation, if it is established by the Commonwealth, by a

preponderance of the evidence, that a defendant violated one of the "specific conditions" of his parole or probation, or committed a new crime. *Foster*, 214 A.3d at 1250.

Trial Court Opinion, 5/26/20 at 13.

As a matter of due process, which is all that was at issue in *Morrissey*, we have no reason to quarrel with the trial court's conclusion parole may be revoked only after a court finds the defendant has violated an actual condition for which he had notice. *See, e.g.*, *Morrissey*, 408 U.S. at 479 ("Implicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole."). In fact, even as a matter of state law, the idea parole can be revoked only after a violation of its terms has been proven is quite unremarkable. *See* Pa.R.Crim.P. 708(B)(2) ("the judge shall not revoke" county parole "unless there has been . . . a finding of record that the defendant violated a condition of" it); 42 Pa.C.S. §9776(e) ("The court may, on cause shown by the probation officer that the inmate has violated his parole, recommit . . . the inmate[.]"). Accordingly, had the Superior Court gone only as far as the trial court in this regard, its minor tinkering with our language in *Foster* may have been tolerable. The problem is it went further and, in so doing, "seized one bridge too far." Commonwealth's Brief at 19.

Aside from bracketing in the words "or parole," the Superior Court used an ellipsis to pave over the problematic parts of Section 9754 referring only to probation conditions. It then cited that altered authority and accused the trial court of wrongly "delegat[ing] its statutorily pr[e]scribed duties" relative to appellee's parole conditions. *Koger*, 255 A.3d at 1291. And the Superior Court relied on its own judicially modified version of the statute to support its new rule that "a sentencing court . . . is required to communicate any conditions of . . . parole as a prerequisite" to revocation. *Id.* To state the obvious, this was improper and violated the most basic tenets of statutory construction. *See, e.g.*, *Commonwealth v. McCoy*, 962 A.2d 1160, 1168 (Pa. 2009) (courts "are not permitted to

ignore the language of a statute"); 1 Pa.C.S. §1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."); *id.* §1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Section 9754, as its title and text make plain, has absolutely no bearing on parole. Moreover, as the Commonwealth correctly points out, "[n]either this Court's decision in *Foster* nor Section 9754 impose an independent, non-statutory mandate in parole cases that a judge specify the conditions of parole at the time of sentenc[ing]." Commonwealth's Brief at 18. Indeed, while constitutional principles like due process may in some ways offer similar protections to probation and parole revocations, it is, at the end of the day, the General Assembly's prerogative to authorize whatever conditions for probation and parole that it sees fit, and to permit them to be relayed to the defendant by some entity other than the trial court at the time of sentencing. *See Morrissey*, 408 U.S. at 488 ("We cannot write a code of procedure; that is the responsibility of each State.").

Respecting probation in this Commonwealth, the General Assembly has instructed that "[t]he court shall attach reasonable conditions authorized by section 9763 (relating to conditions of probation) as it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. §9754(b). This is the default rule. However, we have also held "the Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." *Elliott*, 50 A.3d at 1292; *see id.* ("a trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation"). Taken together,

then, Section 9754 and our interpretive decision in *Elliott* (as well as *Foster*) provide a full framework for imposing conditions of probation.

Yet, "[u]nlike probation conditions, there is no equivalent mandate regarding the conditions of parole[.]" Commonwealth's Brief at 18. Particularly for **county** parole cases like this, appellee has not directed us to, and we have been unable to find, any statutory limitations within the Sentencing Code regarding who may impose parole conditions, the permissible conditions that may be imposed, or the time for imposing them. In fact, the only relevant statutory authority we have found, Section 9776 of the Sentencing Code, does not operate to restrict such powers; it enlarges them. It specifically directs that in a county parole case, the trial court "shall place the inmate **in the charge of** and under the supervision of a designated probation officer." 42 Pa.C.S. §9776(d) (emphasis added). The phrase "in the charge of" is significant, insofar as it must mean something different than the "under the supervision of" phrase that directly follows it. *See Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) ("When interpreting a statute, courts must presume that the legislature did not intend any statutory language to exist as mere surplusage; consequently, courts must construe a statute so as to give effect to every word."). In our view, the difference is obvious: the former phrase places parolees "in the charge of" a county probation officer, which necessarily includes the authority to impose parole conditions in addition to the trial court, whereas the latter phrase indicates the officers are also then responsible for "the supervision of" the parolee and his or her compliance with all conditions imposed.

Of course, the Superior Court did not discuss this (or any other) statute relating to parole. Rather, the lower court essentially determined — incorrectly — that *Foster* was grounded in principles of due process that apply equally to probation and parole, thereby giving it license to fiddle with our holding and selectively quote portions of an inapplicable

statute to support its expansion of the law. As discussed, however, *Foster* was nothing more than a case of statutory construction pertaining to probation; our passing mention of *Morrissey*, a parole case, was in no way intended to suggest that, in all respects and notwithstanding state statutes and rules to the contrary, courts must "review violations of probation and parole under the same standard." *Koger*, 255 A.3d at 1291 n.6. In short, the Superior Court's extension of *Foster* and its attendant statutes to also cover parole revocations assumed too much. And, since no statutory counterpart to Section 9754 exists with respect to the imposition of county parole, and in light of Section 9776, we conclude that sentencing courts are authorized to delegate to county probation officers the responsibility of communicating to defendants the conditions of their parole, and to do so post-sentencing.[10]

---

[10] The concurrence argues we go too far in resolving the delegation issue, but we disagree. Contrary to the concurrence's belief we have raised the issue *sua sponte* and that it was "never discussed in the lower courts[,]" Concurring Opinion at 6, the Superior Court unequivocally held, in a published opinion of first impression, that "a sentencing court may not delegate its statutorily pr[e]scribed duties to probation and parole offices and is required to communicate any conditions of probation or parole as a prerequisite to violating any such condition." *Koger*, 255 A.3d at 1291. In making this new pronouncement of law, the lower court expressly cited *Foster*'s emphasized statement that only a "**court**" can impose such conditions. *Id.*, *citing Foster*, 214 A.3d at 1244 n.5 (emphasis in original). After its reargument petition was denied, the Commonwealth sought further review before this Court, arguing the Superior Court improperly expanded *Foster* and "ignored or misapplied statutes governing parole supervision[.]" Petition for Allowance of Appeal at 9. Notably, the Commonwealth alleged the lower court wrongly held the power to impose parole conditions "could not be delegated by the sentencing court to the probation department." *Id.* at 11. Likewise, in its brief before this Court, the Commonwealth continues to argue the Superior Court's holding that a court must specify the conditions of parole "does not exist in *Foster* or anywhere else in the law" and, in fact, "is contradicted by a series of statutes that specifically grant authority to parole agents to specify conditions of parole." Commonwealth's Brief at 18.

Given all this, we reject the concurrence's portrayal of our decision as resolving the delegation issue "sua sponte." Concurring Opinion at 9 n.4. Moreover, while the concurrence perceives "no essential connection between the question granted for review and the [d]elegation [i]ssue," *id.* at 9, in our respectful view, the connection is manifest. The Superior Court decided the delegation issue, citing *Foster*, and we granted the

Appellee's arguments do not convince us otherwise. He first argues we should dismiss this case as moot. According to him, the "case is moot because the parole sentence is over, having been fully served, and the Commonwealth cannot be given any effective relief if it prevails." Appellee's Brief at 9. We disagree. In rejecting the flip side of this argument in *Foster* — there, the Commonwealth claimed Foster's appeal was moot because he had finished serving his probation — we explained a "case is moot when facts that arise after the initiation of the case leave a litigant without a stake in the outcome of the matter." *Foster*, 214 A.3d at 1246 (citation omitted). However, we determined "the impact of a revocation of probation goes beyond the resentencing decision." *Id.* (citation omitted). Most significantly, we described how "[i]f the defendant is convicted of another crime or has a future revocation . . . proceeding, a past [ ] revocation is something that courts deciding these questions would consider in determining whether [supervised release] is an appropriate sentence." *Id.* (citations omitted). We see no reason why this interest, which was sufficient to shield Foster's claim from a mootness challenge, should apply any less fully to the Commonwealth here. We therefore reject the suggestion of mootness.

On the merits, appellee argues that, "[a]s with probation conditions, the judge has the sole statutory authority to impose conditions governing parole where a county parole sentence is imposed." Appellee's Brief at 21. "That authority," he continues, "is non-delegable." *Id.* The only support appellee supplies for this proposition beyond what the

---

Commonwealth's petition for allowance of appeal to consider broadly whether the Superior Court "err[ed] in expanding" that decision. *Koger*, 276 A.3d at 202. Resolving that issue necessarily requires that we resolve the delegation issue, which the Commonwealth has raised at every step since the Superior Court interposed its new rule. Accordingly, we do not share the concurrence's cramped view of the issue before us. *See* Pa.R.A.P. 2116(a) ("The statement [of the questions involved in a brief] will be deemed to include every subsidiary question fairly comprised therein."); Pa.R.A.P. 1115(a)(4) ("The statement of questions presented [in a petition for allowance of appeal] will be deemed to include every subsidiary question fairly comprised therein.").

Superior Court stated, which we have already rejected, is our decision in *Elliott*. Appellee seizes on language in that case indicating the authority to impose probation conditions lies "solely with the trial courts," *Elliott*, 50 A.3d at 1291, and he submits the same should be true of parole conditions. We are unpersuaded. *Elliott*, like *Foster*, concerned only probation and was resolved on a statutory analysis of Section 9754 and other statutes, none of which apply to this county parole case. Put simply, in the same way *Foster* does not speak to the present issue, neither does *Elliott*.

We do, however, find some purchase in one of appellee's arguments which bears brief discussion. Notably, he contends the "Commonwealth's argument that **the Parole Board**, with no jurisdiction, should have imposed the conditions of parole has no legal support." Appellee's Brief at 7 (emphasis added). In this respect, appellee refers to an argument by the Commonwealth which, although not entirely clear or explicit, seems to imply the state Parole Board (as opposed to county probation officers) may also have authority in county parole cases to provide "general rules of parole outside that of the court." Commonwealth's Brief at 20. We agree with appellee this is inaccurate.

Unlike with county parole cases, the Prisons and Parole Code, 61 Pa.C.S. §§101-7301, contains far more detailed procedures regarding state parole.[11] For example, Section 6141 permits the Board to "make general rules for the conduct and supervision of offenders and may, in particular cases, as it deems necessary to effectuate the purpose of parole, prescribe special regulations for particular persons." 61 Pa.C.S. §6141. Similarly, under Section 6132, the Board is empowered to "establish special conditions of

---

[11] In 2021, the General Assembly enacted the 2021 Pa. Legis. Serv. Act 2021-59 (S.B. 411), which included numerous amendments to the statutes controlling parole. Unless otherwise noted, all references herein to any statute found within the Prisons and Parole Code are to the current versions, though we recognize these statutes (many of which have simply been relocated or minimally altered) were not in place when appellee's parole was initially imposed.

supervision for paroled offenders . . . based on the risk presented by and the rehabilitative needs of the offender." 61 Pa.C.S. §6132(a)(3). As well, "conditions of supervision" are broadly defined under Section 6101 as "[a]ny terms or conditions of the offender's supervision, whether imposed by the court, the department or an agent, or promulgated by the board as a regulation[.]" 61 Pa.C.S. §6101. The Commonwealth highlights these statutes and argues, "should the *Koger* decision stand and require special conditions of parole to also be imposed only by the court at sentencing, the parolee, the supervisory authorities (be it county parole agents or state parole agents), and the public will be at a disadvantage." Commonwealth's Brief at 21-22.

Where the Commonwealth's argument goes awry is in its belief that this case is one over which the state Parole Board had any authority. It did not. As appellee rightly notes, because his sentence involved a maximum sentence of less than two years, the sentencing judge was the one with jurisdiction over his parole. *See* Appellee's Brief at 6-7, *citing* 42 Pa.C.S. §9775 (where sentencing court grants county parole, "parole shall be without supervision by the board"); *see also* 61 Pa.C.S. 6132(a)(2)(ii) ("the powers and duties conferred by this section shall not extend to persons sentenced for a maximum period of less than two years and shall not extend to those persons committed to county confinement within the jurisdiction of the court"). Previously, Section 6132 contained an exception to this rule, allowing a court "by special order [to] direct supervision by the board, in which case the parole case shall be known as a special case and the authority of the board with regard thereto shall be the same as provided in this chapter[,]" but the General Assembly eliminated this exception in 2021. 61 Pa.C.S. §6132(a)(2)(i) (deleted by 2021, June 30, Pub. L. 260, No. 59, §18). Regardless, though, the trial court's sentencing orders here unmistakably referred appellee's parole supervision to the **county** probation office, and there was no "special order" directing supervision by the state Parole

Board. Thus, to the extent the Commonwealth's argument could be construed as implying the Parole Board would have been permitted to act here in addition to the county probation department, we disagree with that much.

Nevertheless, there is no dispute the parole conditions appellee violated were imposed by the county probation office rather than the state Parole Board. As explained above at length, there was nothing improper about that, and the Superior Court erred in concluding otherwise. We therefore reverse its decision in that respect and remand for further proceedings consistent with this opinion.[12]

Chief Justice Todd and Justices Wecht, Mundy and Brobson join the opinion.

Justice Donohue files a concurring opinion.

---

[12] By *sua sponte* injecting *Foster* into appellee's sufficiency-related parole challenge, the Superior Court avoided any need to address appellee's actual argument. Although we have strong doubts about whether the claim has been preserved at either the trial level, *see supra* at 5 n.5 & 7, or the appellate level, *see, e.g.*, *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) ("[O]ur rules of appellate procedure are explicit that the argument contained within a brief must contain 'such discussion and citation of authorities as are deemed pertinent.'"), *quoting* Pa.R.A.P. 2119(a), this Court's preferred course in this type of situation is ordinarily a remand. *See, e.g.*, *Commonwealth v. Raboin*, 258 A.3d 412, 424 (Pa. 2021) (after holding evidence inadmissible under one rule, remanding to the Superior Court because "the question of its admissibility under [a different rule] remain[ed] unanswered" and was beyond our allocatur grant)*; see also Christian Legal Soc. Chapter of the Univ. of Cali., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.28 (2010) ("When the lower courts have failed to address an argument that deserved their attention, our usual practice is to remand for further consideration, not to seize the opportunity to decide the question ourselves."). We see no compelling reason to depart from this usual practice here.