**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN FRANKLIN CAMPBELL | : | |
| | : | |
| Appellant | : | No. 1394 WDA 2022 |

Appeal from the Order Entered November 17, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002641-2020

BEFORE:     BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED: December 26, 2023**

Justin Franklin Campbell (Appellant) appeals from the order entered in the Erie County Court of Common Pleas, denying his motion to strike certain conditions of his probation, which were imposed by Erie County Adult Probation and Parole Department four months after he entered a negotiated guilty plea to corruption of minors[1] and was sentenced. The conditions Appellant challenges prohibit him from: (1) living with or having direct or indirect contact with any person under the age of 18, despite the fact Appellant was living with his one-year-old child; (2) accessing the internet, without prior permission from the probation department; and (3) loitering within 1,000 feet

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6301(a)(1)(i).

of an area where the primary activity involves persons under age 18. The trial court found the probation department adequately explained how these conditions related to Appellant, his offense, and the safety of the community. Trial Ct. Op., 2/2/23, at 4. On appeal, Appellant contends, *inter alia*, the proper analysis is instead whether the probation department's conditions have the necessary nexus to the trial court's sentencing order, and here, they do not.[2] We agree, and thus vacate the order and remand for the trial court to apply the proper review.

## I. Procedural History

On April 28, 2022, Appellant entered a negotiated plea to one count of corruption of minors. The Commonwealth recited the following factual summary: in June of 2020, Appellant, then approximately 26 years old, engaged in vaginal, anal, or oral sex with the victim, a 15-year-old girl. ***See*** N.T., 4/28/22, at 4, 6. It was a "consensual act," although, as the Commonwealth pointed out, the victim was not old enough to consent. ***Id.*** at 5. When asked how he met the victim, Appellant stated his neighbor asked him to pick her up and bring her to his town, "because their parents were drug addicts[ ] and [the victim was] getting abused." ***Id.*** at 8-9. The parties

---

[2] As we discuss ***infra***, Appellant does not challenge the probation department's general authority to impose conditions of supervision, but instead argues these particular conditions are not sufficiently related to the trial court's conditions of probation.

agreed to a sentence of five years' restrictive probation, with the first ten months on electronic monitoring. *Id.* at 3. The Commonwealth stated that in agreeing to this recommended sentence, it considered that Appellant was working and was a caretaker to his own one-year old child and the seven- and ten-year old children of his partner, with whom he lived. *See id.* at 7; N.T., 11/14/22, at 8.

The trial court accepted Appellant's plea and immediately imposed the agreed-upon sentence. N.T., 4/28/22, at 4, 9. The court also ordered: (1) an evaluation for sexual offender counseling; (2) drug and alcohol and mental health evaluations; and (3) no contact with the victim. *Id.* at 9-10.

Four months later, on September 20, 2022, Appellant filed the counseled, underlying motion to strike "extrajudicial" conditions of probation. Appellant's Motion [to] Strike the Extrajudicial Conditions of Probation, 9/20/22, at 1 (unpaginated). Appellant averred the following: on September 1st, he was assigned two new probation offers and was told, under threat of imprisonment, to sign a form entitled, "Conditions of Supervision: Sex Offenders or Those Convicted of a Crime that is Sexual in Nature" (the IASOP[3] Contract). *Id.* at 1. This contract prohibited Appellant from living with any child, and as a result, his own child was removed from his house, despite the facts the child was not an alleged victim and the court had not ordered any

_____

[3] Integrative Adult Sex Offender Program. *See* N.T., 11/14/22, at 6.

such removal. *Id.* at 1-2. Furthermore, the contract prohibited Appellant from accessing the internet or coming within 1,000 feet of, *inter alia*, schools and playgrounds, and it required him to complete a sexual offender program. *Id.* Appellant argued these conditions were not only extreme, but also exceeded the scope of authority of the trial court's sentencing order and had no nexus to the underlying crime. *See id.* at 2.

The trial court conducted a hearing on November 14, 2022. In his testimony, Appellant reiterated the probation department informed him he could be in violation of probation if he did not sign the IASOP Contract. N.T., 11/14/22, at 16. Furthermore, he was told his child, along with his partner's children, would have to move out that same day, and the children in fact have moved out. *Id.* at 21-22.

The Commonwealth presented Erie County Parole and Probation Officer (PO) Timothy Hardner, who testified to the following. He worked in the probation department's IASOP program. Generally, when a probationer has "plead[ed] to a sexual assault[4] and is sentenced for an evaluation for the sex offender treatment program," his department will supervise them in the IASOP program. N.T., 11/14/22, at 7. The IASOP Contract was drafted by "multiple

---

[4] As stated above, in this case, Appellant pleaded guilty to corruption of minors.

counties" and "approved by the courts."[5] *Id.* at 27. The department requests the probationer sign the IASOP Contract **before** they are evaluated "in an effort to keep the community safe until" the evaluation is completed. *Id.* at 7-8. If the evaluation establishes the probationer does **not** need treatment, other conditions in the contract would nevertheless remain in effect, for example a prohibition against possessing pornography. *Id.* at 10. In addition to the IASOP Contract, a probationer is subject to "[t]he standard probation contract[, which also] has some sex offender conditions[.]" *Id.* at 7.

With respect to Appellant specifically, PO Hardner denied telling him he would go to prison if he did not sign the contract.[6] N.T., 11/14/22, at 8. The PO further testified: although he told Appellant he could not have contact with his partner's two children, he **could** live with and have contact with his own biological child. *Id.* at 9. PO Hardner stated that generally, the probation department does not restrict contact with a biological child, unless they were the victim. *Id.* Additionally, PO Hardner stated that in general, IASOP conditions may become "less restrictive" on "a case-by-case" basis, as a probationer "move[s] through the program;" for example, the probationer

_____

[5] This statement was not made during the PO's formal testimony, but rather while the trial court and parties argued the issue. *See* N.T., 11/14/22, at 27.

[6] PO Hardner stated the four-month delay between sentencing and Appellant's first meeting with him was due to the PO's learning "about [this] case later than normal." N.T., 11/14/22, at 22-23.

may "be able to have contact with minors so long as all the bases are covered." *Id.* at 11, 13. Finally, PO Hardner explained: Appellant was not in violation of his probation; the evaluation for sexual offender counseling had yet to be scheduled; but "it was agreed [Appellant] would not have to go further with any proceeding until" the underlying motion to strike the supervisory conditions was resolved. *Id.* at 9-10.

On cross-examination, PO Hardner conceded: (1) the plain language of the IASOP Contract did not include an exception allowing contact with biological children; and (2) no new contract is executed if a restriction is lifted or loosened, and instead, the probationer remains bound by the original IASOP Contract. N.T., 11/14/22, at 12-13, 15. Furthermore, the contract provided the probationer "would follow all of [the] restrictions," and PO Hardner acknowledged that a violation of any of these terms could result in revocation proceedings. *Id.* at 12-13.

The trial court asked whether there was "a responsibility to have a lot more of [these IASOP conditions] explained at the actual sentencing." N.T., 11/14/22, at 23. The Commonwealth acknowledged: "Possibly[. I]t might be a matter [sic] of giving the contract [to the defendant] at the time of the sentencing." *Id.* The trial court also commented that "maybe some language in [the contract] should be firmed up a little bit." *Id.* at 27. Nevertheless, the Commonwealth argued the probation department must be able to "make some . . . guidelines and parameters for individuals [who have] been

convicted of" sexual offenses. *Id.* at 23. Appellant responded the imposition of the instant supervisory conditions on a probationer was outside the probation department's "wheelhouse." *Id.* at 24.

On November 17, 2022, the trial court entered the underlying order, denying Appellant's motion to strike the conditions of supervision. In response to the trial court's direction, Appellant filed a Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

## II. Pa.R.A.P. 1925(b) Statement

Preliminarily, we consider the suggestion, made by both the trial court and the Commonwealth, that Appellant's Rule 1925(b) statement failed to identify the particular supervisory conditions he was challenging, and thus his issues should be found waived for vagueness pursuant to Pa.R.A.P. 1925(b)(4). *See* Trial Ct. Op. 2/2/23, at 3; Commonwealth's Brief at 5. Appellant responds his statement was sufficiently detailed, and in any event, "[g]iven the narrow issue presented in the motion/hearing, . . . the challenged conditions would not, **and did not**, come as any surprise to the trial court." Appellant's Brief at 16.

"Rule 1925(b)(4)(ii) provides that the Rule 1925(b) statement 'shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge.'" ***Commonwealth v. Price***, 284 A.3d 165, 170 (Pa. 2022) (emphasis omitted), *citing* Pa.R.A.P. 1925(b)(4)(ii).

However, in **Commonwealth v. Laboy**, 936 A.2d 1058 (Pa. 2007), our Supreme Court allowed a broad Rule 1925(b) claim of insufficient evidence in what it deemed was a "relatively straightforward drug case." **Id.** at 1060. In that case, while the Commonwealth alleged the defendant acted as a lookout and money handler in multiple drug sales, "the evidentiary presentation span[ned] a mere [30] pages of transcript[,]" and the trial court "readily apprehended [the defendant's] claim and addressed it in substantial detail." **Id.** at 1058, 1060.

In this appeal, Appellant's Rule 1925(b) statement raised the following claims:

> 1. This Honorable Court abused its discretion in delegating its duties of imposition of conditions of probation to the Adult Probation Department after date of sentencing.
>
> 2. This Honorable Court abused its discretion in allowing the Adult Probation Department to impose unduly restrictive conditions in the new probation contract than the actual sentenced imposed where no nexus was established.
>
> 3. This Honorable Court abused its discretion in denying Appellant[']s Motion to Strike the Extrajudicial Conditions pf Probation.

Appellant's Statement of Matters Complained of on Appeal, 12/15/22.

While it is true Appellant did not identify the particular conditions of supervision he wished to challenge, we agree with his summation that the one issue presented in both his motion and at the hearing was narrow: he was challenging the IASOP Contract's prohibitions against him living with any minor, having internet access, and coming within 1,000 feet of a place where

- 8 -

the primary activity involves minors. Indeed, the trial court identified these conditions in its opinion. Trial Ct. Op. at 3-4. Accordingly, under the guidance of **LaBoy**, we decline to find waiver for vagueness. **See** Pa.R.A.P. 1925(b)(4)(ii); **Laboy**, 936 A.2d at 1058, 1060.

### III. Appellant's Arguments

On appeal, Appellant presents one issue for our review:

> Did the trial court err when it denied Appellant's motion to strike the extrajudicial conditions of probation as (1) the trial court may not delegate the imposition of probation conditions to the adult probation department after sentencing, and (2) the probationary conditions imposed by the adult probation department were unreasonable as they lacked any nexus to the underlying offense[?]

Appellant's Brief at 2 (some capitalization omitted).

As stated above, Appellant does not challenge the probation department's general authority to impose conditions of supervision. Instead, he argues the trial court erred in denying his motion to strike these particular conditions of the IASOP Contract: that he is prohibited from living with, having contact with, and even possessing photographs of any minor; that he may not access the internet; and that he may not come within 1,000 feet of any place, including schools and recreation areas, where the primary activity involves minors.

First, Appellant contends the above supervisory conditions lack a sufficient nexus to the trial court's sentencing order or the underlying offense. He points out that at sentencing, the Commonwealth did not seek, and the

court did not impose, any restrictions on his ability to live with, have contact with, or possess photographs of minors, aside from the victim. Appellant's Brief at 22. Instead, Appellant maintains, the court imposed only the following: drug and alcohol and mental health evaluations, payment of costs; no contact with the victim; and an evaluation for sexual offender counseling. Appellant's Brief at 19. Appellant insists that none of the "new, much broader [IASOP] proscriptions upon [his] liberty [were] ordered or deemed necessary by the court at sentencing." *Id.* at 22.

To this end, Appellant also reasons the IASOP conditions could be considered to "run contrary to the trial court's intentions at sentencing." Appellant's Brief at 22. In support, Appellant reiterates the Commonwealth: (1) had considered his role as a caretaker to children, along with his employment, when it agreed to a sentencing recommendation of probation; and (2) did not seek any restriction on Appellant's ability to care for these children. *Id.*

Appellant further asserts that while a condition of "no contact" with the victim or other minors is appropriate in some cases, such a condition must be individually tailored to the circumstances. Appellant's Brief at 25-26. Appellant alleges the present condition, that he have no contact with his one-

year-old child or his partner's children, is unreasonable.[7]  ***See id.*** at 26.

Additionally, the prohibition against accessing the internet is not reasonable,

where there was no evidence Appellant used the computer or internet for

sexually explicit materials or as a source to establish inappropriate

relationships.  ***Id.***  Appellant concludes the trial court improperly delegated to

the probation department the imposition of conditions that lacked a nexus to

the underlying offense.  ***Id.*** at 15, 24 n.3.

Finally, Appellant claims we cannot excuse the probation department's

alleged inability to craft individual supervision contracts for each probationer.

Appellant's Brief at 23, *citing* N.T., 11/14/22, at 28-29 (Commonwealth

arguing the "probation department is doing the best job they can to make it

a case-by-case basis[, but t]hey can't craft the probation contracts separately

for each person").  Appellant argues that on the contrary, the conditions of

probation must be individualized.    Appellant's Brief at 23, *citing*

***Commonwealth v. Koren***, 646 A.2d 1205, 1208 (Pa. Super. 1994) ("A

probation order is unique and individualized.").  We conclude Appellant has

presented a meritorious claim for relief.

_____

[7] We note "the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause."  ***In re A.J.R.-H.***, 188 A.3d 1157, 1178-79 (Pa. 2018).

## IV. Law on Probation Department's Conditions of Supervision

We first consider the relevant law:

Our Supreme Court has distinguished between "conditions of probation," which are imposed by a trial court, and "conditions of supervision," which are imposed by the Board and its agents. [***Commonwealth v. Elliott***, 50 A.3d 1284, 1291-92 (Pa. 2012).]

The Sentencing Code permits trial courts to set forth "reasonable conditions authorized by [former subsection 9754(c)[8]] as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b).

> [Former subsection 9754(c)] delineates fourteen conditions a sentencing court may impose upon a defendant in the imposition of probation[, including directing them] to attend treatment and addiction programs, pay fines and restitution, and refrain from frequenting "unlawful or disreputable places." [42 Pa.C.S.] § 9754(c)(12), (8), (11), and (6), respectively. Further, subsection (c)(13) provides a "catch-all" for trial courts, allowing them to order defendants "[t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." ***Id.*** § 9754(c)(13).

[***Elliott***, 50 A.3d at 1288.]

> The Board's authority to set forth conditions of supervision, on the other hand, is derived from [former] sections 6131 and 6151 of the Prisons and Parole Code, which mandate that the Board and its agents establish uniform standards for the

---

[8] At the time ***Elliott*** was decided, then-in effect Subsection 9754(c) set forth the specific probation conditions that a trial court could impose. ***See Elliott***, 50 A.3d at 1288. This list of conditions now appears at Subsection 9763(c). ***See*** 42 Pa.C.S. § 9763(b)(1)-(15) (permissible probation conditions include: meeting family responsibilities, undergoing counseling or drug and alcohol screening, attending educational or vocational programs, and paying fines or restitution).

supervision of probationers under its authority and implement those standards and conditions. *Id.* (citing 61 Pa.C.S. §§ 6131(a)(5)(ii) & 6151).[9]

After examining the interplay between the Crimes Codes and Prisons and Parole Code, our Supreme Court concluded that while only the trial court could set conditions of probation, "**the Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court**." *Id.* at

_____

[9] We note Sections 6131(a)(5)(ii) and 6151 were repealed in 2020 and 2021, respectively. Nevertheless, their provisions presently appear in other sections of the Prisons and Parole Code, as follows.

Former Subsection 6131(a)(5)(ii) stated: "The board shall have the power and its duty shall be: . . . [t]o establish, by regulation, uniform Statewide standards for . . . [t]he supervision of probationers." 61 Pa.C.S. § 6131(a)(5)(ii), *repealed by* Act 2019-115 (S.B. 501), § 18, *approved* December 18, 2019, *eff.* Feb. 17, 2020.

Current Subsection 6171(a)(11)(ii) provides almost identical language: "The department shall have the following powers and duties: . . . [t]o establish, by regulation, uniform Statewide standards for . . . [t]he supervision of probationers." *See* 61 Pa.C.S. § 6171(a)(11)(ii).

Similarly, Section 6151, a definitions section, included the following definition for "conditions of supervision:" "Any terms or conditions of the offender's supervision, whether imposed by the court, the board or an agent, including compliance with all requirements of Federal, State and local law." *See* 61 Pa.C.S. § 6151, *repealed* Act 2021-59 (S.B. 411), § 23, *approved* June 30, 2021, *eff.* June 30, 2021.

The current Section 6101 includes generally the same definition, with minor revisions not relevant here: "Any terms or conditions of the offender's supervision, whether imposed by the court, the department or an agent, or promulgated by the board as a regulation, including compliance with all requirements of Federal, State and local law." *See* 61 Pa.C.S. § 6101.

Accordingly, we conclude the repealed statutory provisions, discussed in *Elliott* and pertaining to the Probation Department's authority to impose conditions of supervision, live on in current Sections 6171(a)(11)(ii) and 6151.

1292. Stated another way, the "trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision, so long as these supervision conditions are in furtherance of the trial court's conditions of probation." *Id.* Therefore, "a probationer may be detained, arrested, and 'violated' for failing to comply with either a condition of probation or a condition of supervision," as long as the condition of supervision does not exceed the Board's authority to impose it. *Id.*

*Commonwealth v. Shires*, 240 A.3d 974, 977-78 (Pa. Super. 2020)

(emphasis & paragraph break added).

## V. Analysis

The trial court opinion addressed Appellant's arguments, in sum, as follows:

> At the hearing, **[PO] Hardner adequately explained the extent to which these provisions related to Appellant, and the nexus between those safety precautions, the safety of the community and the sexual offense**. *See* [N.T., 11/14/22, at 6-29.] The conditions of the probation contract will be reviewed with Appellant after his evaluation and are subject to mitigation depending on the results of the evaluation. *Id.*
>
> Implicit in the Court's Sentencing Order that Appellant comply with the "Conditions of Supervision" is an understanding that Appellant is to comply with the standard probationary conditions for a person such as Appellant who is convicted of a sexual offense. No extra judicial conditions of probation were imposed and no abuse of discretion at sentencing or otherwise occurred as Appellant was presented with the standard IASOP [C]ontract. The appeal must be dismissed.

Trial Ct. Op. at 4 (emphasis added).

We agree with the trial court that in addition to complying with conditions of probation imposed by the court, Appellant must comply with any **proper** conditions of supervision imposed by the probation department. ***See***

- 14 -

61 Pa.C.S. §§ 6131(a)(5)(ii), 6151; *Elliott*, 50 A.3d at 1288; *Shires*, 240 A.3d at 977. However, we disagree with the trial court's one sentence, conclusory summation that here, the IASOP supervisory conditions were proper because PO "Hardner adequately explained the extent to which these provisions related to Appellant, and the nexus between those safety precautions, the safety of the community and the sexual offense." *See* Trial Ct. Op. at 4.

First, we conclude that these cited factors — whether a condition of probation has a nexus to Appellant, his offense, or the protection of the community —are for the **trial court** to consider in imposing a **sentence**. *See* 42 Pa.C.S. 9721(b) (trial court shall consider relevant sentencing factors, including "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant"). To the extent Appellant avers the trial court improperly conferred review of these factors to the probation department, we agree. *See* Appellant's Brief at 15 ("[T]he trial court may not delegate the imposition of probation conditions to the adult probation department after sentencing[.]")

Instead, the authority of the probation department to impose **conditions of supervision** is limited by **the conditions of probation** imposed by the trial court. *See Elliott*, 50 A.3d at 1288; *Shires*, 240 A.3d at 977. Pursuant to *Elliott*, such conditions must be "germane to, elaborate

on, or interpret any conditions of probation that are imposed by the trial court," and must be "in furtherance of the trial court's conditions of probation." **See Elliott**, 50 A.3d at 1291-92; **Shires** 240 A.3d at 978. Here, the trial court undertook no such analysis, and indeed, did not even mention the conditions of probation it imposed.

As stated above, the sole conditions of probation, imposed by the trial court at the time of sentencing, were: (1) an evaluation for sexual offender counseling; (2) drug and alcohol and mental health evaluations; and (3) no contact with the victim. N.T., 4/28/22, at 9-10. As Appellant points out, the Commonwealth contemplated his role as caretaker to his one-year-old child and the minor children of his partner, when it agreed to a recommended sentence of restrictive probation. **See id.** at 7. The Commonwealth also acknowledged, "Appellant is a father, not related to this case in any way." **Id.** Neither the trial court nor the Commonwealth suggested it was proper to prohibit Appellant from having contact with these children, or in fact any other minors, with the exception of the victim. **See id.** at 7, 8.

On the other hand, however, it appears the trial court credited the testimony of PO Hardner that regardless of the plain language of the IASOP Contract: (1) a probationer is never prohibited contact from their own biological child (unless the child was the victim); and (2) if Appellant shows progress and compliance with the IASOP Contract conditions, certain restrictions may be lifted. **See** N.T., 11/14/22, at 27 ("[I]f you're headed to

where it's supposed to be, these restrictions will be eased as time goes on, and I think that's the safest thing."); Trial Ct. Op. at 4 ("The conditions of the probation contract will be reviewed with Appellant after his evaluation and are subject to mitigation depending on the results of the evaluation.").

Nevertheless, in light of myriad factors presented in this matter, we decline to decide, in the first instance, whether the probation department exceeded its authority when it imposed the IASOP conditions presently challenged. Instead, we vacate the order denying Appellant's motion to strike the conditions of the IASOP Contract. We remand for the trial court to undertake a proper review under **Elliott** — namely, whether each of the challenged conditions is "germane to, elaborate on, . . . interpret," or is "in furtherance of" the particular conditions of probation imposed by the trial court at the time of sentencing. **See Elliott**, 50 A.3d at 1291-92; **Shires** 240 A.3d at 978. The court may hear oral argument, direct the parties to brief this issue, or undertake any other action to facilitate its review.

## VI. Conclusion

In sum, we determine the trial court applied improper factors in deciding whether the probation department acted within its authority to impose the supervisory conditions on Appellant. We thus vacate the order denying Appellant's motion to strike conditions, and remand for further review.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/26/2023