2024 PA Super 272

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CURTIS LEE BLANGO | : | |
| | : | |
| Appellant | : | No. 1621 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 23, 2023
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0000503-2003

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.:                    **FILED: NOVEMBER 14, 2024**

Curtis Lee Blango appeals from the judgment of sentence imposed following the revocation of his probation. Additionally, Blango's counsel seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967). We affirm and grant counsel permission to withdraw.

Before we turn to a review of Blango's appeal, we note with extreme displeasure the Commonwealth's failure to file an appellee's brief. "An appellee is required to file a brief that at minimum must contain 'a summary of argument and the complete argument for appellee.'" ***Commonwealth v. Pappas***, 845 A.2d 829, 835 (Pa. Super. 2004) (quoting Pa.R.A.P. 2112). In ***Pappas***, the panel referred to the Commonwealth's failure to file a proper

---

[*] Former Justice specially assigned to the Superior Court.

appellee's brief as "unacceptable." *Id*. We echo that opinion and remind the Commonwealth of its obligation to file an appellee's brief in future appeals.

In this case, following a jury trial in 2004, Blango was found guilty of a variety of sex offenses committed against Blango's minor stepdaughter. After ordering a presentence report and Megan's Law assessment, the trial court sentenced Blango to an aggregate term of 6½ to 20 years' incarceration, followed by an aggregate consecutive probationary term of 15 years. Following post-sentence motions, the court entered a modified sentencing order, in which it imposed the following specific conditions of probation:

- Defendant shall maintain/obtain full-time employment
- Have an MH/MR evaluation and undergo individual counseling if recommended
- Undergo sex offender evaluation
- Attend group counseling at a sex offender counseling service such as T.W. Ponessa Associates
- Undergo medical evaluation and receive pharmacologic treatment as recommended
- Undergo psychiatric treatment when required
- Undergo maintenance polygraphs during his entire period of parole
- STD class
- Community service
- No contact with the victim, Tawanna, her sister, or his ex-wife, Iris, or any other family members.

*See* Sentencing Order, 2/18/04, at 2. Finally, the court requested that the Pennsylvania Board of Probation and Parole ("the Board") supervise Blango as a special parolee and probationer upon his release from state prison. *See* Request For Special Probation/Parole Supervision, 2/24/04; *see also* Request For Special Probation/Parole Supervision, 5/17/04.

In August 2023, a notice of alleged violations of probation was filed, followed by a request for a revocation hearing. At the time, Blango had already maxed out his incarceration term of his sentence and was serving a five-year probationary sentence for counts 14 through 16.[1] The notice indicates that the current probationary term was from February 3, 2023 through February 3, 2028. The notice further indicated that Blango was accused of committing the following violations:

> **Condition#8: No contact with Michael Thompson, Natasha Wansley, Brianna Thompson, Lyric Thompson, Jaylen Thompson or Branden Thompson including messages, letters, presents, email, or verbal communication. You are also to maintain a 500 ft distance from 2644 N. Hollywood St, Philadelphia:**
> 7/17/23-Michael Thomson informed parole staff that the offender sent text messages to his minor child, and provided screenshots of these to parole staff. He also reported that they have witnessed the offender outside of 2644 N. Hollywood St, Philadelphia.
>
> **Condition # 8 (Special Probation) -No contact with anyone under the age of 18 without permission from Probation/Parole staff :**
> 7/17/23— The offender sent text messages to a minor child. Screenshots of these were sent to his Parole Agent.

_____

[1] We note it is unclear from the record when Blango was originally released from incarceration. It is asserted in certain filings that Blango maxed out the full twenty years of his sentence in state prison. However, it is also asserted that he was on parole at some point prior to switching to probation. This would only be possible if Blango were released from prison prior to the full 20-year term. As it is undisputed that Blango was on probation at the time of the alleged violation, this discrepancy does not affect our disposition.

Notice of Alleged Violations of Probation/Parole/Intermediate Punishment, 8/9/23.

A revocation hearing was held on October 23, 2023. Probation Officer Curtis Stockdale testified that Blango was living in Philadelphia while being supervised. *See* N.T., Revocation Hearing, 10/23/23, at 3. Officer Stockdale stated Blango had contact with the victim's family from the original case and sent text messages to a minor child, in violation of his probation. *See id*. Screenshots of the text messages were provided to Blango's state parole agent. *See id*.

John Lorenz, a state parole agent, stated that Blango had previously been taken into custody on three separate occasions during parole supervision for violations related to contacting the same children, making the instant offense the fourth violation in total. *See id*. at 3-4. Upon learning of this information, Officer Stockdale explained that he was changing his original recommendation of additional state probation to a request for a period of incarceration. *See id*. at 4. Agent Lorenz also recommended a revocation with a period of incarceration. *See id*.

Officer Stockdale explained that Blango had signed written instructions on February 10, 2022, outlining the specific rules of no contact with the family in question, which stated "all their names, to not be within 500 feet of their residence, and also to have no contact with anyone under the age of 18." *Id*. at 7. Based on the above, the court revoked Blango's probation on counts 14

through 16 and resentenced him to a period of incarceration of 1 to 2 years.

*Id*. All other counts remained the same. *Id*. This timely appeal followed.

We turn first to counsel's petition to withdraw. To withdraw pursuant to

*Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

An *Anders* brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). "[I]f counsel's petition and brief satisfy *Anders*, we will then undertake our own review of

the appeal to determine if it is wholly frivolous." ***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa. Super. 2007) (brackets added, citation omitted).

We find counsel has substantially complied with the preliminary requirements set forth in ***Anders***. Counsel filed a petition to withdraw, certifying he has reviewed the case and determined that Blango's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Blango, and his assessment of why those issues are meritless, with citations to relevant legal authority. While a copy of the letter sent to Blango advising him of his rights is not attached to the petition to withdraw, counsel did attach a copy of the letter to his ***Anders*** brief, filed on the same date. The letter informs Blango that counsel reviewed the record, found the appeal wholly frivolous, and advised Blango that he has the right to retain new counsel in pursuit of his appeal or proceed *pro se* and that he has the right to submit any additional issues he believes are meritorious.

Counsel has therefore substantially complied with the requirements of ***Anders***. Blango has not filed a response. We therefore proceed to review the issues outlined in the ***Anders*** brief, which present potential challenges to the revocation of probation and the sentence imposed after revocation.

The "[r]evocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion."

*Commonwealth v. Perreault*, 930 A.2d 553, 558 (Pa. Super. 2007). Our review of a revocation proceeding is limited to determining the validity of the proceeding, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing. *See Commonwealth v. Cartrette*, 83 A.3d at 1033-35.

"The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future antisocial conduct." *Perreault,* 930 A.2d at 558 (citation omitted).

In his 1925(b) concise statement, Blango argued the trial court erred in revoking his probation when the violated condition was invalid because it was imposed solely by state probation and not the court at the time of sentencing. Blango further argues the record does not demonstrate the condition is germane and related to a court-imposed condition.

Our Supreme Court has distinguished between "conditions of probation," which are imposed by a trial court, and "conditions of supervision," which are imposed by the Board and its agents. *See Commonwealth v. Shires*, 240 A.3d 974, 977 (Pa. Super. 2020) (citation omitted).

In *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019), our Supreme Court held the statutory language under Section 9754 must be strictly

construed to require all specific conditions of probation to be enumerated at the time of sentencing, holding:

> We find the language of the pertinent statutory provisions to be clear and unambiguous. The law provides a general condition of probation – that the defendant lead "a law-abiding life," i.e., that the defendant refrain from committing another crime. To [e]nsure that general condition is met, or to assist the defendant in meeting that general condition, the order must also include certain "specific conditions" from the list enumerated in section 9754(c). Only upon the violation of any of the "specified conditions" in the probation order (general or specific) may a court revoke the defendant's probation. In other words, a court may find a defendant in violation of probation only if the defendant has violated one of the "specific conditions" of probation included in the probation order or has committed a new crime. The plain language of the statute does not allow for any other result.

**Foster**, 214 A.3d at 1250.

"In **Commonwealth v. Elliott**, 50 A.3d 1284 (Pa. 2012), … our Supreme Court analyzed the interplay between the Board's regulatory authority set forth in the Prison and Parole Code, specifically 61 Pa.C.S.A. §§ 6131 and 6151, and the trial court's authority to impose a sentence as set forth in 42 Pa.C.S.A. §§ 9751, 9754 and 9771." **Commonwealth v. Smith**, ___ A.3d ___, 2024 WL 4352953 (Pa. Super. filed Oct. 1, 2024). The **Elliott** Court explained:

> [T]he Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court. This interpretation gives meaning to all of the statutory provisions relevant to this case and thus: (1) maintains the sentencing authority solely with a trial court; (2) permits the Board and its agents to evaluate probationers on a one-on-one basis to effectuate supervisions; (3) sustains the ability of the Board to impose conditions of supervision; and (4) authorizes that a probationer may be

detained, arrested, and "violated" for failing to comply with either a condition of probation or conditions of supervision. In summary, a trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation.

*Elliott*, 50 A.3d at 1292.[2]

The trial court addressed Blango's arguments as follows:

Whether the sentencing court placed these conditions on the record at sentencing is unclear. However, his state parole agent had authority to provide him with conditions of supervision, including the conditions he violated herein, as well as violated while on state parole supervision. Additionally, his county probation officer informed him of these same no contact conditions. All of these efforts complied with 42 Pa.C.S.A. sections 9754 and 9771, as well as our Supreme Court's decisions[].

Here, the evidence presented at the time of the revocation hearing established that [Blango] was aware of the conditions that he was accused of violating; i.e., that he was to have no contact with the family in question, that he was not to be within 500 feet of their residence, and also not to have contact with anyone under the age of 18. While [Blango] argues that the record does not demonstrate that the conditions he is said to have violated are germane to a court-imposed condition, this argument lacks merit. [Blango] was found guilty of three counts of indecent assault of a person under 13 years of age and those were the counts at which his probation was revoked. Because not having contact with the victim, or the victim's family, as well as not having contact with anyone under the age of 18, would be inherent to the conditions of his probation, we fail to see how those conditions would not be germane. Further, [Blango] acknowledged the conditions by signing the February 10, 2022 specific rules involving no contact

_____

[2] The defendant in *Elliott* also was placed on special probation. However, similar to the case at hand, the condition alleged to have been violated was not among the enumerated special conditions imposed by operation of law pertaining to special probation. In both cases, the condition alleged to have been violated was a specific condition of probation imposed by the trial court.

- 9 -

and, accordingly, cannot argue that he was not aware of the conditions being imposed.

Trial Court Opinion, 2/6/24, at 3-4.

Upon review, we conclude the Commonwealth established by a preponderance of the evidence that Blango violated the terms of his probation. We agree with the trial court that the probation department had authority to provide Blango with conditions of supervision. However, this authority is not unfettered. Instead, the authority of the probation department to impose a condition of supervision was limited by the conditions of probation imposed by the trial court. **See Elliott**, 50 A.3d at 1288; **see also Shires**, 240 A.3d at 977. Such conditions must be "germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." **See Elliott**, 50 A.3d at 1291-92; **Shires** 240 A.3d at 978.

The record is devoid of a transcript from the original sentencing hearing. Accordingly, it is unclear whether the court placed certain conditions of supervision on the record at the time of sentencing. However, the trial court imposed certain conditions of parole/probation with which Blango was required to comply and informed him of these requirements by way of its sentencing order. In its February 2, 2004 sentencing order, the court specified that upon his release, Blango was to have "[n]o contact with the victim, [], her sister, or his ex-wife, [] or any other family members." Order, 2/2/04, at 1. In a February 18, 2004 order in which the court modified its sentence, the court again specified the exact same condition. **See** Order, 2/18/04, at 2.

Blango was accused of violating a condition of supervision that prevented him from contact with six named individuals. It is clear from the testimony provided at the revocation hearing that these named individuals are Blango's family members. *See* N.T., Revocation Hearing, 10/23/23, at 3, 6-7. As the sentencing order established a condition of probation that prohibited contact with "any other family members," the probation department's condition of supervision that specified certain family members with which Blango was prevented from having contact was clearly "germane to" "elaborate[d] on" and "interpret[ed]" the original condition of probation established by the trial court.

Finally, the evidence presented at the revocation hearing established that Blango was aware of the conditions he was accused of violating. His state parole agent had authority to provide Blango with conditions of supervision including the conditions he violated over the four separate occasions. Blango's county probation officer informed Blango of these no contact conditions and Blango acknowledged notice of these conditions by signing written instructions on February 10, 2022, outlining the specific rules of no contact with the family in question. Accordingly, we conclude the trial court did not err in finding a probation violation occurred.

Next, counsel identifies potential sentencing issues regarding the court's imposition of a term of incarceration of 1 to 2 years. Regarding a challenge to the discretionary aspects of a probation-revocation sentence, we have stated:

An appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission to do so. Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by establishing that (1) the appeal was timely filed; (2) the challenge was properly preserved by objecting during the revocation sentencing or in a post-sentence motion; (3) his or her brief includes a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of the sentence pursuant to Pa.R.A.P. 2119(f); and (4) the concise statement raises a substantial question that the sentence is inappropriate under the Sentencing Code.

*Commonwealth v. Starr*, 234 A.3d 755, 759 (Pa. Super. 2020) (citations and internal quotation marks omitted). As noted above, Blango timely appealed. While counsel omitted a Rule 2119(f) statement, this does not preclude our review of this issue in an *Anders* context. *See Commonwealth. v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015). However, counsel notes Blango waived any discretionary sentencing challenge because he failed to file any post-sentence motion challenging the discretionary aspects of his sentence. *See Anders* Brief, at 20. Further, Blango did not object to his sentence at the revocation hearing. Our review of the record confirms Blango has failed to preserve his challenge to the discretionary aspects of sentencing. Accordingly, he cannot invoke this Court's jurisdiction over this issue. *See Starr*, 234 A.3d at 759.

Even if a challenge to the discretionary aspects of sentence were preserved, we would find the trial court did not abuse its discretion in finding that Blango required a sentence of total confinement.

Once the court concludes a violation occurred and probation was not effective, the court may resentence the defendant to a total term of incarceration if: (1) the defendant was convicted of a new crime; (2) the defendant's conduct makes it likely that he or she will commit a new crime if not incarcerated; or (3) incarceration "is essential to vindicate the authority of the court." 42 Pa.C.S.A. § 9771(c); **Foster**, 214 A.3d at 1251.

It was uncontested at the revocation hearing that the instant violation was Blango's fourth violation while being supervised. Based on a clear pattern of continued violations, the court was within its authority to impose an incarceration sentence to vindicate its authority. **See Commonwealth v. McAfee**, 849 A.2d 270, 277 (Pa. Super. 2004) (stating total confinement may be necessary to vindicate the authority of the court where a defendant demonstrates a "lack of willingness to comply with ... multiple court orders entered in [his] case.").

We conclude the issues identified in this appeal are frivolous, and our independent review of the record reveals no additional issues of arguable merit. Accordingly, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/14/2024</u>