J-A23004-24

2024 PA Super 280

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RYAN CASTANEIRA :
:
Appellant : No. 299 MDA 2024

Appeal from the Order Entered January 31, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-MD-0001477-2022

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY BOWES, J.: **FILED: NOVEMBER 20, 2024**

Ryan Castaneira appeals from the order entered on January 31, 2024,

denying his petition for writ of *habeas corpus*. We affirm.

The trial court summarized the background of this matter thusly:

On October 2, 2009, [A]ppellant was convicted of attempted child molestation in Georgia. [He] was sentenced to ten years of incarceration followed by twenty years of probation. [A]ppellant was paroled in 2014. Upon release, [A]ppellant's parole was transferred to Pennsylvania via the Interstate Compact for Adult Offender Supervision [("ICAOS")]. [A]ppellant's parole ended on September 28, 2019, and his twenty years' probation period began. On August 25, 2022, [he] received a citation for harassment. [Four days later, A]ppellant received a notice of two probation violations and was told that he could not have contact with his wife and was to seek a new temporary residence[,] as he was no longer permitted to reside with his wife. [A]ppellant was placed on electronic monitoring.

On September 29, 2022, [A]ppellant signed a document [presented by the Pennsylvania Board of Probation and Parole ("PBPP")] titled, "Optional Special Conditions for Sex Offenders." The conditions include[d] the general sex offender conditions.

On October 6, 2022, [A]ppellant filed a writ of *habeas corpus* arguing that the new condition prohibiting him from having contact and living with his spouse is not germane to the conditions set by the trial court in Georgia. The petition further [asserted] that the [PBPP] lacked the authority to impose the special sex offender conditions because they were not imposed by the sentencing court in Georgia. On October 12, 2022, th[e c]ourt denied said petition. . . . Appellant filed a motion for reconsideration of the denial of the writ of *habeas corpus*. On November 14, 2022, th[e c]ourt granted reconsideration and set the matter for a hearing . . . . Appellant filed a notice of appeal on [the same day, after the court] granted reconsideration and scheduled a hearing.

Trial Court Opinion, 6/3/24, at 1-2 (cleaned up).

The trial court issued a statement requesting that this Court remand the matter so that it could hold a reconsideration hearing. On review, we quashed the appeal as premature pursuant to Pa.R.A.P. 1701 because the trial court timely granted reconsideration before the appeal was filed. ***See In re Castaneira***, 305 A.3d 990, 2023 WL 5995521, at *1 (Pa.Super. 2023) (non-precedential decision). Thereafter, the court conducted a hearing and ultimately denied the petition for *habeas corpus* relief.

Appellant timely appealed and complied with the court's order to file a statement of errors pursuant to Pa.R.A.P. 1925(b). The trial court further entered a responsive Rule 1925(a) opinion. Appellant presents the following questions for our review:

I. Did the court err when it denied Appellant's petition for writ of *habeas corpus*[?]

a. Does the [PBPP] have the authority to impose additional conditions of probation that were not ordered by the trial court?

b. Does the imposition of additional conditions of probation that were not ordered by the trial court amount to an illegal sentence?

c. Did Appellant waive his right to challenge conditions of probation when he signed the application to have his supervision transferred from Georgia to Pennsylvania pursuant to the [ICAOS?]

Appellant's brief at 4 (cleaned up).

We note that "an appellate court will review a grant or denial of a petition for writ of *habeas corpus* for abuse of discretion, but for questions of law, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. McClelland***, 233 A.3d 717, 732 (Pa. 2020) (citation omitted). Further, "[i]n reviewing a trial court's order . . . denying a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." ***Commonwealth v. Price***, 189 A.3d 423, 427 (Pa.Super. 2018) (cleaned up).

As discussed above, Appellant's supervision was transferred from Georgia to Pennsylvania, and therefore his claims are all to some extent intertwined with the ICAOS and our interpretation thereof. Our High Court has noted that,

[i]n matters involving statutory interpretation, the Statutory Construction Act directs courts to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). A statute's plain language generally provides the best indication of legislative intent. In construing the language, however, and giving it effect, we should not interpret statutory words in isolation, but must read

- 3 -

them with reference to the context in which they appear. ***Accord Commonwealth v. Office of Open Records***, 628 Pa. 163, 103 A.3d 1276, 1285 (2014) (statutory language must be read in context; in ascertaining legislative intent, every portion is to be read together with remaining language and construed with reference to statute as a whole).

***Commonwealth v. Guilian***, 141 A.3d 1262, 1267 (Pa. 2016) (some internal citations omitted).

Although our task begins with the text of the ICAOS, we observe that there has been minimal prior interpretation of the statute by Pennsylvania courts. Within the background provision of the compact, the General Assembly elucidated the following:

> It is the purpose of this compact and the Interstate Commission created hereunder, through means of joint and cooperative action among the compacting states: to provide the framework for the promotion of public safety and protect the rights of victims through the control and regulation of the interstate movement of offenders in the community; to provide for the effective tracking, supervision, and rehabilitation of these offenders by the sending and receiving states; and to equitably distribute the costs, benefits and obligations of the compact among the compacting states.

61 Pa.C.S. § 7112 at Article I. The ICAOS further allows for the Interstate Commission to promulgate rules "in order to effectively and efficiently achieve the purposes of the compact[.]" ***Id***.

Pertinent here, ICAOS Rule 4.101 addresses the manner and degree of supervision in the receiving state, which in this case is Pennsylvania: "A receiving state shall supervise offenders consistent with the supervision of other similar offenders sentenced in the receiving state, including the use of incentives, corrective actions, graduated responses, and other supervision

techniques." ICAOS Rule 4.101. Further, Rule 4.103 concerns conditions of supervision and provides that "[a]t the time of acceptance or during the term of supervision, the receiving state may impose a condition on an offender if that condition would have been imposed on an offender sentenced in the receiving state." ICAOS Rule 4.103(a).

Also dispositive to our resolution of Appellant's claims is the distinction between conditions of probation and those of supervision. Probation conditions are imposed by sentencing courts and are authorized by 42 Pa.C.S. § 9745, which states that "[t]he court shall attach reasonable conditions authorized by [§] 9763." 42 Pa.C.S. § 9745(b). Section 9763 in turn lists fourteen different conditions the court may impose, including a catchall relating to "other things reasonably related to rehabilitation." 42 Pa.C.S. § 9763(b)(15).

On the other hand, conditions of supervision are governed by the Prisons and Parole Code, which directs the "[PBPP] and its agents to establish uniform standards for the supervision of probationers under its authority, and further to implement those standards and conditions." *Commonwealth v. Elliott*, 50 A.3d 1284, 1291 (Pa. 2012) (citing 61 Pa.C.S. §§ 6131(a)(5)(ii) and 6151). Our High Court has clarified that "the [PBPP] and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." *Id*. at 1292. Phrased another way, the board "may impose more specific conditions

of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation." *Id*.

With this background in mind, we return to the first two questions presented on appeal. Appellant argues that his sentence is illegal because the PBPP lacked the authority to compel him to agree to special conditions, as they were unrelated to any probationary conditions imposed by the Georgia sentencing court. *See* Appellant's brief at 8-9. He highlights that when he was initially sentenced, the only express condition was to register as a sex offender. *Id*. at 10. Appellant maintains that the new special conditions imposed by the PBPP, which, *inter alia*, restrict his ability to be around minors without prior approval, are not "germane to, elaborate on, nor [do they] interpret" his registration requirement. *Id*. at 10. He therefore concludes that the PBPP is usurping the power of the Georgia sentencing court, which elected not to impose the supervisory conditions in question. *Id*. at 11.

Appellant further contends that his claims are supported by the ICAOS rules. Specifically, he asserts that by its title, Rule 4.101 makes it clear that it concerns and governs conditions of **supervision**, not **probation**. *Id*. at 12. Additionally, he interprets Rule 4.101 in conjunction with Rule 4.103, which allows a receiving state to impose new "conditions," to mean that any newly imposed supervisory requirement must relate to his duty to register, since that is all the Georgia court mandated at sentencing. *Id*. at 12-13. Appellant also urges us to adopt the holding of the Supreme Judicial Court of Massachusetts in *Goe v. Commissioner of Probation*, 46 N.E.3d 997 (Mass.

2016), that Rule 4.103 only allows imposition of new conditions if they are mandated by law. *See* Appellant's brief at 13-15. In that case, the *Goe* Court considered whether the Massachusetts Department of Probation was permitted to impose global positioning system monitoring, as a mandatory condition of probation pursuant to the ICAOS, upon a transferred probationer from Connecticut. After reviewing the language of the relevant rules and the bench book promulgated by the Interstate Commission, the *Goe* Court concluded somewhat summarily that a receiving state could only impose a condition when it would "necessarily have been imposed" had sentencing occurred within the receiving state. *See Goe*, 46 N.E.3d at 1006. Appellant argues that we should follow suit.

In denying Appellant's *habeas corpus* petition, the trial court held that Appellant waived his challenge by signing the PBPP special conditions form or, alternatively, that the restrictions were permissible pursuant to the ICAOS. As to the latter, it found that if "[A]ppellant has not waived his right to challenge the special conditions, the compact administrator[1] is authorized to impose these special conditions because they are the same conditions that

_____

[1] The compact administrator is the person "responsible for the administration and management of the state's supervision and transfer of offenders subject to the terms of this compact, the rules adopted by the Interstate Commission and policies adopted by the State Council under this compact." 61 Pa.C.S. § 7112. Presumably, the trial court discussed the compact administrator because that role is referenced in a prior version of ICAOS Rule 4.103, which specifically listed that person as having the authority to impose special conditions. However, that version of the rule was amended effective June 1, 2017, approximately five years before Appellant signed the PBPP form herein, to remove any reference to the compact administrator.

would have been imposed had [A]ppellant been sentenced in Pennsylvania." Trial Court Opinion, 6/3/24, at 4-5.

For its part, the Commonwealth likewise argues that the ICAOS allows the restrictions ultimately placed upon Appellant. It cites 61 Pa.C.S. § 7122, which is entitled "Supervision of persons paroled by other states" and is included with the administrative provisions relating to the ICAOS, for support that the PBPP is permitted to impose supervisory conditions. **See** Commonwealth's brief at 7. That section declares that other states must comply with Pennsylvania's laws with respect to transferred supervision under the ICAOS, including that "[e]lectronic monitoring **or other special conditions**, or both, of supervision shall be imposed as deemed necessary by the receiving state." 61 Pa.C.S. § 7122(d)(5) (emphasis added). The Commonwealth interprets this provision as the General Assembly intending to give the PBPP the authority to impose special conditions as a receiving state.

The Commonwealth also contends that a plain reading of ICAOS Rule 4.103 supports its position, as it permits imposition of special conditions that would have been imposed upon the offender had he been sentenced in the receiving state. **See** Commonwealth's brief at 7-8. It remarks that "[t]he conditions that are challenged are used all the time in the Commonwealth of Pennsylvania, consistent with probationary sentences for sex offenders that are imposed by trial courts all over the state." **Id**. at 10.

Upon review, we conclude that the trial court did not err in denying Appellant's petition for writ of *habeas corpus*. Initially, the plain language of

Rule 4.103 indicates that Pennsylvania, as the receiving state, is permitted to place the same conditions upon Appellant as it would upon Pennsylvania probationers. *See* ICAOS Rule 4.103 (stating that a receiving state "may impose a condition on an offender if that condition would have been imposed on an offender sentenced in the receiving state"). We disagree with the holding of the Supreme Judicial Court of Massachusetts in *Goe*, which does not bind us, that a condition must be statutorily mandated in order for Rule 4.103 to apply. The text of the rule expressly addresses conditions that "would have been imposed," and does not dictate that they "must" or "necessarily would" have been imposed. As both the trial court and the Commonwealth have noted, the conditions imposed upon Appellant herein, although optional, are routine requirements for sexual offenders sentenced within this Commonwealth. *See*, *e.g.*, N.T. Hearing, 1/22/24, at 5 (The Commonwealth arguing that these conditions would have been imposed upon Appellant had he been sentenced in Pennsylvania). Therefore, there can be no dispute that pursuant to the clear language of the ICAOS, Pennsylvania was not limited to only the conditions imposed by the sentencing court in Georgia.

We are likewise not persuaded by Appellant's argument that the sentence is illegal, or the conditions otherwise impermissible, simply because he signed an agreement with the PBPP instead of being resentenced by a court in Pennsylvania. As our Supreme Court has articulated, the responsibility of the PBPP is to instill "uniform standards for the supervision of probationers

under its authority, and further to implement those standards and conditions."

***Elliott***, 50 A.3d at 1292. When Appellant signed the "Optional Special Conditions for Sex Offenders," he agreed to the requirements that are consistently and routinely imposed upon similarly-situated offenders who were sentenced to probation in this Commonwealth. In the same way that the PBPP may impose these special conditions on Pennsylvania-sentenced probationers, it could do the same to Appellant as part of his acceptance to being transferred here.

Our position is also supported by advisory opinions promulgated by the Interstate Commission, which as noted was created through enactment of the ICAOS. For example, the commission wrote as follows when discussing Rule 4.103:

> In seeking to have supervision transferred to another state, the offender accepts that a sending state can retake, that no formal extradition proceeds are required, and that he or she is subject to the same type of supervision as other offenders in the receiving state. The receiving state can even add additional requirements on an offender as a condition of transfer. **In short, a probationer or parolee is subject to whatever reasonable conditions the** sentencing court or **corrections authority deems necessary to promote both community safety and offender rehabilitation.** The offender accepts probation or parole on a conditional basis – fulfilling the requirements imposed upon him or her.

Advisory Opinion 2-2005, Interstate Commission for Adult Offender Supervision, 4/3/05 (internal citations omitted, emphases added). In the same vein, when discussing Rule 4.101, the commission declared as follows:

> Moreover, **Rule 4.101 plainly requires the receiving state to supervise an offender transferred in a manner "consistent with the supervision of other similar offenders sentenced in the receiving state."** Clearly, this portion of the rule does not permit a receiving state to impose the establishment of sex offender risk level or community notification on offenders transferred under the compact **if it does not impose these same requirements on offenders sentenced in the receiving state**.

Advisory Opinion 5-2006, Interstate Commission for Adult Offender Supervision, 4/4/06 (emphases added). In other words, the rules do allow sex offender prohibitions to be placed on transferees to the extent they are initially imposed upon those sentenced in Pennsylvania.

Finally, we note that provisions within the bench book issued by the Interstate Commission undermine Appellant's arguments and bolster our holding. *See* ICAOS Bench Book, § 3.6.1 ("In seeking to transfer, an offender accepts any conditions imposed by the receiving state; that is, by applying for transfer and with acceptance by a receiving state, the offender accepts the condition or risks forfeiting the ability to transfer supervision."); *see also* ICAOS Bench Book, § 3.6.2 ("If a statute governs authorization of a condition and/or does not violate any constitutional protections, *habeas corpus* relief is unavailable to an offender contesting the condition[.]").

For the above reasons, we concur with the trial court that the conditions agreed to by Appellant did not render his sentence illegal. Accordingly, we

have no cause to disturb the court's order denying Appellant's petition for writ of *habeas corpus*.[2]

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/20/2024

---

[2] Appellant's final question on appeal concerns whether he waived the right to challenge the conditions when he signed the PBPP form. Since this was simply an alternative basis for the trial court's denial of the petition, we need not address it here.